Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Andamios de Puerto Rico, Inc.<br><br>    Demandante-Recurrida<br><br>              v.<br><br>JPH Contractors, Corp. Rafael Ortiz Pérez, Maribel Pérez y la Sociedad Legal de Gananciales que juntos componen; Municipio de Juana Díaz, Representado por su Honorable Alcalde Ramón Hernández Torres, Compañía Aseguradora ABC; John Doe y Richard Roe; Y Fulano de Tal<br><br>    Demandados<br><br>Newport Bonding & Surety Company<br><br>    Demandada -Peticionaria | Certiorari<br><br>2010 TSPR 124<br><br>179 DPR ____ |

Número del Caso: CC-2007-1067


Fecha: 8 de julio de 2010


Tribunal de Apelaciones:


        Región Judicial de San Juan — Panel I


Juez Ponente:    Hon. Erik Ramírez Nazario


Abogados de la Parte Peticionaria:

        Lcdo. Jorge Lora Longoria
        Lcdo. José A. Andreu García


Abogado de la Parte Recurrida:

        Lcdo. Eduardo J. Corretjer Reyes


Materia: Cobro de Dinero

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Andamios de Puerto Rico, Inc.<br><br>    Demandante-Recurrida<br><br>    v.<br><br>JPH Contractors, Corp. Rafael Ortiz Pérez, Maribel Pérez y la Sociedad Legal de Gananciales que juntos componen; Municipio de Juana Díaz, Representado por su Honorable Alcalde Ramón Hernández Torres, Compañía Aseguradora ABC; John Doe y Richard Roe; y Fulano de Tal<br><br>    Demandados<br><br>Newport Bonding & Surety Company<br><br>    Demandada-Peticionaria | CC-2007-1067 | |

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 8 de julio de 2010.

La parte peticionaria, Newport Bonding & Surety Company (Newport), nos solicita la revisión de una sentencia del Tribunal de Apelaciones que confirmó un dictamen del Tribunal de Primera Instancia, Sala Superior de San Juan, que acogió una moción de sentencia sumaria a favor de la parte recurrida, Andamios de Puerto Rico, Inc., (Andamios). El foro primario determinó que Newport y los codemandados, JPH Contractors, Corp. (JPH), el Sr. Rafael Ortiz Pérez, la Sra. Maribel Pérez y la Sociedad Legal de Gananciales compuesta por ambos, debían pagar solidariamente la cantidad de $21,184.73 en concepto del

precio y valor de lista del equipo arrendado y no devuelto para la construcción de un proyecto en el Municipio de Juana Díaz. Además, ordenó satisfacer la suma de $1,500.00 por concepto de honorarios de abogados.

En particular, determinó que Newport, como fiadora de JPH, era responsable ante el arrendador, Andamios, por el equipo, entiéndase andamios y encofrado,[1] no devuelto y utilizado en la obra. La controversia que hoy nos ocupa nos permite resolver si la fianza de cumplimiento y pago, emitida por Newport, cubría el valor en la lista del equipo arrendado y no devuelto por JHP. Concluimos que sí.

I

En el año 2002, JPH y el Municipio de Juana Díaz suscribieron un contrato para la construcción de las nuevas gradas del Parque Atlético Norma Pérez Franceschi. Consecuentemente, el 22 de diciembre de 2002, Newport le extendió a JPH un contrato de fianza de cumplimiento y pago por la cantidad de $258,710.00 a favor del Municipio. Esta fianza garantizaba la terminación de la obra, la mano de obra, y el pago de materiales utilizados en la construcción. Dicho contrato de fianza expuso, en lo pertinente, que:

> **WHERE AS**, Contractor has by written agreement dated _____, entered into a contract With Owner for **"CONSTRUCCIÓN DE NUEVAS GRADAS PARA EL PARQUE ATLÉTICO NORMA PÉREZ FRANCESCHI (SUBASTA**

---

[1] Molde formado con tableros o chapas de metal, en el que se vacía el hormigón hasta que fragua, y que se desmonta después. Diccionario de la Lengua Española, Real Academia Española, vigésima segunda edición, 2001.

**2002-2003-PROYECTO #1"**. In accordance with drawing and specifications prepared by _____, which contract is by reference made a part hereof, and is hereinafter referred to as the Contract.
[…]
The performance and payment bonds furnished in conjunction with this construction contract guarantees the physical completion of the work and the <u>payment of all labor and material bills incurred in the performance of the contract</u>. (Subrayado Nuestro).

Comenzada la obra, JPH arrendó a Andamios el equipo de encofrado y andamiaje, por el que se comprometió a emitir pagos mensuales. En el contrato se estableció, entre otras cosas, que en caso de que JHP no devolviera el equipo, éste indemnizaría a Andamios por el valor de la lista. Además, se obligó a responder por los daños, incluyendo los ocasionados por causas naturales, que el equipo pudiera sufrir durante el arrendamiento. Tras cumplir con el contrato por casi dos años, JPH dejó de pagar la renta del equipo arrendado a Andamios, quien requirió el pago de la deuda en varias ocasiones, sin éxito alguno.

El 10 de septiembre de 2004, Andamios presentó demanda de cobro de dinero en el Tribunal de Primera Instancia contra JPH, el Municipio, Newport, el Sr. Rafael Ortiz Pérez, la Sra. Maribel Pérez, y la Sociedad Legal de Bienes Gananciales compuesta por ambos. En el contrato, el Sr. Rafael Ortiz Pérez y la Sra. Maribel Pérez, únicos accionistas de JPH, se comprometieron a garantizar solidariamente las obligaciones de su empresa. Andamios

alegó que JPH había dejado de realizar los pagos mensuales de alquiler del equipo, los cuales, en agosto del año 2004, ascendían a $5,790.96. Así también, Andamios requirió el pago de $21,184.73, como valor en la lista del equipo no devuelto. En cuanto a Newport, expresó que ésta le respondía solidariamente por haber emitido la fianza de pago y cumplimiento del proyecto en construcción.

El Sr. Rafael Ortiz Pérez, la Sra. Maribel Pérez y la Sociedad Legal de Bienes Gananciales compuesta por éstos, no contestaron la demanda, por lo que posteriormente se les anotó la rebeldía. JPH, Newport y el Municipio presentaron contestaciones a la demanda y levantaron varias defensas afirmativas. En particular, Newport indicó que la fianza expedida cubría solamente el pago de los cánones de arrendamiento de los equipos utilizados en el proyecto, mientras éstos fueran útiles para la culminación del contrato de construcción.

Tras varios trámites procesales, Andamios, JPH y el Municipio llegaron a un acuerdo. Por su parte, Andamios aceptó detener la deuda acumulada en concepto de renta del equipo, siempre y cuando el Municipio consignara en el tribunal la cantidad de $11,581.92, en concepto de renta hasta ese momento y JPH entregara el equipo no devuelto. JPH aceptó entregar el equipo e indicó que el mismo se encontraba cerca del proyecto. Debido a ello, el tribunal concedió el término de quince (15) días para que JPH y el Municipio cumplieran con lo acordado.

En octubre de 2005, el Municipio consignó en el tribunal la cuantía adeudada por concepto de renta. Por tal razón, Andamios desistió del pleito en su contra. No obstante, JPH no devolvió el equipo arrendado. Por ello, Andamios solicitó al Tribunal de Primera Instancia que exigiera a JPH la devolución del equipo o su valor. También sugirió que JPH indicara dónde se encontraba el equipo para recogerlo.

El 27 de marzo de 2006, Andamios presentó una moción de sentencia sumaria en la que alegó que los codemandados solidariamente pagaran la suma de $21,184.73, por ser el valor del equipo en la lista. En relación a Newport, expuso que la fianza emitida por éste cubría el importe de los materiales, equipo, y herramientas utilizadas en la obra, por lo que debía cubrir el valor del equipo no devuelto. Andamios alegó ser beneficiaria de la fianza y solicitó a que se le concediera la cantidad de $1,500.00 por concepto de honorarios de abogado, por la dilación en los procedimientos. Por último, Andamios pidió que se liberaran los fondos de los cánones de rentas consignados por el Municipio.

Newport se opuso y solicitó que se dictara sentencia sumaria a su favor. Insistió en que Andamios, como suplidor de materiales, era beneficiaria de la fianza emitida, pero sólo en cuanto a la renta y trasporte del equipo arrendado, mientras el equipo fue utilizado en el proyecto. Aseguró que la fianza no cubría la pérdida o

falta de devolución de equipo arrendado por el contratista y que, de haber existido alguna responsabilidad adicional por su parte, ya había sido cubierta por el pago emitido por el Municipio. Andamios replicó a la oposición.

El 5 de junio de 2006, el Tribunal de Primera Instancia declaró ha lugar la solicitud de sentencia sumaria de Andamios. Concluyó que JPH y el matrimonio Ortiz Pérez debían responder a Andamios en virtud del contrato de arrendamiento. En cambio, el tribunal entendió que por ser la fiadora, Newport debía cubrir el costo del equipo perdido. Ordenó a los codemandados a pagar solidariamente la cantidad de $21,184.73 por el valor en lista del equipo. Así también, impuso el pago de honorarios de abogado por temeridad, según solicitado. Finalmente, decretó la liberación de los fondos consignados por el Municipio. Newport solicitó reconsideración, la cual fue denegada por el Tribunal de Primera Instancia.

Newport apeló al Tribunal de Apelaciones y alegó que el Tribunal de Primera Instancia erró al dictar sentencia sumaria a favor de Andamios, y no a su favor. Arguyó que no respondía por la pérdida del equipo, ya que el contrato de fianza no lo contemplaba. Adujo que el tribunal no podía imponerle responsabilidad más allá de lo pactado en el contrato de fianza y que, al momento de suscribirse éste, no eran previsibles para Newport las obligaciones adicionales pactadas por JPH. Alegó que la obligación

contraída por JPH en el contrato de arrendamiento con Andamios, en cuanto a la pérdida o falta de devolución, no fue contemplada o prevista al emitirse la fianza, por lo que Newport no debía responder. Newport sostuvo que con la fianza sólo garantizó el cumplimiento de JPH en relación con el contrato de obras, el pago de labor y materiales incurridos en la construcción. Señaló que el equipo no devuelto no era parte del material utilizado para la ejecución de la obra y que su valor no podía ser cubierto por la fianza. Indicó, además, que no procedía la concesión de honorarios de abogados por temeridad.

El 18 de septiembre de 2007, el Tribunal de Apelaciones emitió sentencia en la que confirmó al Tribunal de Primera Instancia. El foro apelativo intermedio explicó que en la actualidad rige una interpretación liberal y no restrictiva del contrato de fianza, por lo que los argumentos de una cubierta restrictiva de la fianza no procedían. Explicó que Newport, en virtud del contrato de fianza, se subrogó en la posición de deudor principal de JPH, por lo que debía responder por el equipo arrendado y no devuelto. Mencionó que la obligación de Newport se extiende a "los perjuicios o daños sufridos por el arrendador a causa de la pérdida del equipo de construcción que se alquiló para ser utilizado en el proyecto". Apéndice del recurso a la página 15. Asimismo, avaló los honorarios de abogados

concedidos. Newport solicitó reconsideración, la cual fue denegada por el foro apelativo intermedio.

Entonces, Newport presentó este recurso de *certiorari,* en el cual expone que el Tribunal de Apelaciones incidió al confirmar la sentencia del Tribunal de Primera Instancia. Asegura que no es responsable de la pérdida del equipo alquilado y no devuelto, ya que esa obligación no estaba contemplada dentro del alcance de la fianza prestada. Insiste en que los únicos materiales cubiertos deben ser los que se utilizan y permanecen dentro de la obra. Alega, además, que no garantizó el contrato de arrendamiento de los andamios y encofrado, sino el de construcción en beneficio del Municipio. Por último, plantea que erró el Tribunal de Apelaciones al confirmar la concesión de los honorarios de abogado por temeridad. Newport entiende que la controversia ante nuestra consideración es novel y que, por lo tanto, no hubo temeridad.

Ambas partes han comparecido, por lo que procedemos a resolver.

II

El Artículo 1721 del Código Civil, 31 L.P.R.A. sec. 4871, dispone sobre el contrato de fianza que

> [p]or la fianza se obliga uno a pagar o cumplir por un tercero, en el caso de no hacerlo éste.

> Si el fiador se obligare solidariamente con el deudor principal, se observara lo dispuesto en las secs. 3101 a 3112 de este título.

El contrato de fianza es una garantía personal, en la que el fiador puede obligarse a menos, pero nunca a más que el deudor principal, tanto en la cantidad como en lo oneroso de la obligación. Artículo 1725 del Código Civil, 31 L.P.R.A. sec. 4875. De haberse obligado a más, se reducirá su obligación a los límites del deudor. *Id.* Los contratos de fianza no se presumen y deben ser expresos. Éstos no pueden extenderse a más de lo contenido en ellos. Artículo 1726 del Código Civil, 31 L.P.R.A. sec. 4876.

Este tipo de contrato ha generado amplia jurisprudencia en este Tribunal, particularmente, en disputas relacionadas con la industria de la construcción. Inicialmente, este Tribunal adoptó una interpretación restrictiva en relación a los contratos de fianza, debido a que en el pasado éstos se otorgaban personalmente, con liberalidad y sin ánimo de lucro. Sin embargo, con la llegada de compañías que se dedican al negocio de prestar fianza mediante el pago de primas, la interpretación restrictiva se abandonó en Cristy & Sánchez v. E.L.A., 84 D.P.R. 234, 244 (1961).

La tendencia moderna se inclina a interpretar liberalmente las fianzas de construcción y a favorecerse al beneficiario. E.L.A. v. Urb. Damiro, Inc., 112 D.P.R. 244 (1982); A. L. Arsuaga, Inc. v. La Hood Const., Inc., 90 D.P.R. 104 (1964). Hemos señalado que la interpretación liberal o inclusiva de las fianzas, no es carta blanca al poder judicial para descartar los pactos y convenios entre

las partes. Mun. San Juan v. Stadium & Coliseum Opers., 113 D.P.R. 490, 494 (1982). Por consiguiente, la aplicación de una interpretación liberal no puede abstraerse de la intención de las partes al convenir. Es por ello, que debe atenderse al texto del contrato de fianza, visto en su totalidad y conforme a las reglas de hermenéutica dispuestas en nuestro Código Civil. Caguas Plumbing v. Continental Const. Corp., 155 D.P.R. 744, 753 (2001).

En Ulpiano Casal, Inc. v. Totty Mfg. Corp., 90 D.P.R. 739 (1964), un materialista demandó a una aseguradora al amparo de una fianza de ejecución de obra. La fiadora insistía en que no cubriría los materiales de la obra. No obstante, en la fianza asumió responsabilidad por el fiel cumplimiento del contratista con el contrato de la empresa. En ese contrato se comprometió a pagar la labor y los materiales suplidos. Concluimos entonces que el nombre de la fianza no es determinante y que la fiadora respondía al materialista. En otras palabras, el nombre de una fianza no determina cuáles son las responsabilidades del fiador ya que las responsabilidades las delimita el contenido del contrato de obra, así como las condiciones generales y especiales acordadas.

Anteriormente se liberaba con facilidad al fiador de responder por la menor violación del contrato por parte del dueño de la obra. No obstante, dicha tendencia cambio en Olazábal v. U.S. Fidelity, Etc., 103 D.P.R. 448 (1978).

En ese caso, el dueño de la obra, a cuyo favor se había emitido una fianza, incumplió ciertas condiciones del contrato de construcción. El contrato se había hecho formar parte de la fianza. Luego, el dueño de la obra reclamó a la fiadora pero ésta se negó a responder. La fiadora alegó que había quedado liberada de las obligaciones de la fianza por el incumplimiento de las condiciones pactadas. En aquel momento, resolvimos que el incumplimiento de un contrato de fianza por parte del acreedor libera a la fiadora solamente si dicho incumplimiento le causó perjuicio sustancial a ésta.

Como se puede apreciar, nuestra jurisprudencia ha tomado una dirección dirigida principalmente, a reconocer una amplia legitimación a obreros, materialistas y subcontratistas para reclamar a la fiadora. O sea, se ha impulsado que los materialistas, los obreros y los subcontratistas, a quien el contratista original respondía, puedan recobrar como terceros beneficiarios de la fianza. Caguas Plumbing, Inc. v. Continental Const. Corp., supra, pág. 753.

Sobre ese particular, en A. L. Arsuaga, Inc. v. La Hood Const., Inc., supra, la fiadora alegó como fundamento para no responder, que no existía relación contractual alguna entre ella y el demandante. En ese caso, se reconoció que aun cuando los materialistas no forman parte del contrato de fianza de pago, son terceros beneficiarios y pueden reclamar directamente a la fiadora el pago de las

sumas adeudadas por el contratista. *Id.*, 108-110. Así, quedo establecido que un suplidor de materiales, tanto para obras públicas como para obras privadas, tiene derecho a reclamar directamente a la fiadora que otorgó una fianza de pago y cumplimiento el pago de materiales suplidos a un contratista. Industrial Equip. Corp. v. Builders Ins. Co., 108 D.P.R. 290, 294 (1979).

Cabe señalar que cuando se realiza un proyecto de construcción, el contratista general de la obra usualmente garantiza el cumplimiento de sus obligaciones con dos contratos de fianza de construcción, los cuales se denominan de cumplimiento (performance bond), y de pago, (labor and material payment bond). Mediante la **fianza de cumplimiento**, la fiadora garantiza al dueño de la obra que el proyecto que el contratista va a ejecutar, conforme a su obligación según pactada en el contrato de construcción, se realizará de acuerdo al contrato de construcción, o pagará los daños incurridos hasta el límite de dinero establecido en la fianza.

Por otra parte, en la **fianza de pago**, la fiadora le garantiza al dueño de la obra que toda la labor y los materiales utilizados en el proyecto serán pagados por la fiadora si el contratista general incumple. Un fiador solidario responde igual que su fiado. En otras palabras, éste viene obligado a cumplir el contrato íntegra y totalmente, desde el momento en que el fiado deja de cumplir lo convenido. San José Realty, S.E. v. El Fénix de

P.R., 157 D.P.R. 427, 451 (2002). En tal caso, los suplidores o materialistas están legitimados para exigir el pago de los créditos directamente a la fiadora. Jiménez y Saellas, Inc. v. Maryland Cas. Co., 92 D.P.R. 207, 209-210 (1965).

En Goss v. Structural Concrete Products, 92 D.P.R. 391 (1965), se presentó una situación de hechos parecida a la de autos, en cuanto al incumplimiento del contratista con un arrendador por el equipo que fue utilizado en la obra. En ese caso, resolvimos que una fianza de pago cubría la renta y transporte de una grúa utilizada en la construcción. Sostuvimos que, dada la naturaleza de la obra, el equipo usado, entiéndase una grúa, era necesario para cumplir con los términos del contrato y que el mismo fue utilizado con ese propósito. Por consiguiente, se consideró que el uso de ese equipo era parte de la mano de obra cubierta por la fianza. A tales efectos, señalamos que "considérese ya como materiales, […], o como mano de obra, como entendemos nosotros, siempre estaría cubierto por la fianza". Id., pág. 395.

Entendimos en esa ocasión que la fiadora se obligó a pagarle a todo el que le suministrara materiales, así como a satisfacer lo adeudado al que hubiese rendido trabajo y esfuerzo en la obra. Dijimos que "para llevar a cabo cierta parte del trabajo, en vez de ocupar obreros exclusivamente[,] se utilizó un artefacto mecánico que facilitaba la realización de la obra". Id., pág. 394.

Ciertamente, como indicamos en esa oportunidad, si todo el trabajo hubiese sido realizado manualmente, la fiadora hubiese tenido que pagar los salarios o costo de la obra. El alquiler de la grúa contribuyó a la realización de la construcción. Es más, concluimos que no se trataba de otorgar una interpretación liberal de la fianza, sino que era una interpretación lógica, razonable y justa. *Id.*, pág. 395.

### A

En el presente caso, JPH se comprometió con el Municipio a construir las nuevas gradas del Parque Atlético Norma Pérez Franceschi por un precio ajustado, el cual incluía los materiales y equipos. El Municipio requirió la obtención de una fianza de cumplimiento y pago para la construcción de la obra. Por tal razón, JPH suscribió un contrato de fianza con Newport para garantizar la terminación de la obra, el pago de mano de obra y materiales a utilizarse en la construcción. Así, hizo suya la totalidad de la obligación del contratista en caso de incumplimiento y no estableció una limitación expresa que le restringiera sus obligaciones en cuanto al arrendamiento de equipo. A su vez, JPH suscribió un contrato de arrendamiento con Andamios para que le supliera los andamios y el encofrado de la obra. JPH en ese contrato se obligó a pagar el valor en la lista del equipo alquilado, de no devolverse.

JPH dejó de pagar la renta del equipo y no devolvió el mismo, según le fuera solicitado. Andamios procedió a reclamar la deuda y el valor en la lista del equipo a JPH, el Municipio, y Newport, entre otros. El Municipio, como dueño de la obra, pagó las rentas adeudadas, al amparo de su obligación bajo el Artículo 1489 del Código Civil, 31 L.P.R.A. sec. 4130.[2] Conforme a ello, Andamios le liberó de responsabilidad. No obstante, quedó pendiente de pago el valor de los andamios y encofrado no devueltos.

Conforme a lo anterior, debemos evaluar si erró el Tribunal de Apelaciones al resolver que la fianza de pago y cumplimiento emitida por Newport cubría el valor en la lista de los equipos arrendados y no devueltos por JHP. El contrato de fianza suscrito entre la aseguradora y el contratista establecía expresamente que el fiador se obligaba a cubrir "all labor and material bills incurred in the performance of the contract". O sea, Newport se comprometió con el contratista frente al dueño de la obra por el cumplimiento del contrato de construcción y, en particular, a pagar toda factura de materiales requerida para la realización del contrato de obra.

Por lo tanto, existe una obligación contractual de Newport a responder por los materiales de la obra, en caso de que JPH no lo hiciera. Creemos que conforme a la naturaleza de la obligación, Newport debe responder por el

---

[2] "Los que ponen su trabajo en una obra ajustada alzadamente por el contratista no tienen acción contra el dueño de ella sino hasta la cantidad que éste adeude a aquél cuando hace la reclamación".

valor del equipo alquilado y no devuelto, porque se trata de material utilizado en la realización de la obra y para la ejecución de la misma. Sin duda, los andamios y el encofrado facilitaron la ejecución de la obra y deben estar contenidos dentro de la fianza de pago. De no haberse alquilado ese equipo, se hubiese tenido que invertir en la compra de esos materiales para realizar la obra. Es por ello, que, al igual que en el caso de Goss v. Structural Concrete Product, supra, es razonable entender que el equipo puede ser considerado como material, lo que implica que está cubierto por la fianza.

Ahora bien, nos corresponde resolver si, en virtud de lo anterior, la fianza incluye el valor del equipo en la lista por su pérdida o falta de devolución. Como adelantamos, entendemos que sí. Del lenguaje expreso en la fianza nos queda claro que Newport es responsable de las cuentas de los materiales necesarios para cumplir con el contrato. La deuda surge de una obligación entre el materialista y el contratista, por lo que es razonable, conforme a una interpretación liberal del contrato de fianza, concluir que la fianza cubre el costo del equipo perdido o no devuelto.

B

¿Cuál es la responsabilidad de la fiadora por la pérdida o no devolución del equipo alquilado por JPH?

El Artículo 1453 del Código Civil, 31 L.P.R.A. sec. 4060, establece que

[e]l arrendatario es responsable del deterioro o pérdida que tuviera la cosa arrendada, a no ser que prueba haberse ocasionado sin culpa suya.

Si la cosa objeto del contrato de arrendamiento se deteriora o se pierde, total o parcialmente, estando en poder del arrendatario, se presume que tal deterioro o pérdida se debe a su culpa y le corresponde al arrendatario demostrar lo contrario. Castro Anguita v. Figueroa, 103 D.P.R. 847 (1975). Ello es cónsono con la obligación del arrendatario de cuidar la cosa como un buen padre de familia. Artículo 1445 del Código Civil, 31 L.P.R.A. sec. 4052(2).

Asimismo, el Artículo 1458, 31 L.P.R.A. sec. 4065, dicta que

[s]i se pierde la cosa arrendada o algunos de los contratantes falta al cumplimiento de lo estipulado, se observará respectivamente lo dispuesto los artículos 1136 y 1137 y en los 1054 y 1077.

En lo pertinente, el Artículo 1054, 31 L.P.R.A. sec. 3018, establece que quedan sujetos a indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieran en dolo, negligencia o morosidad.

Expuesto el marco de derecho anterior, y al entender que Newport se comprometió a cumplir con las obligaciones relacionadas a los materiales necesarios para realizar el contrato de obra, concluimos que éste responde de los perjuicios o daños sufridos por el arrendador a causa de la pérdida del equipo. Actualmente, Andamios solamente

reclama por el valor en la lista del equipo arrendado. Sin embargo, Newport alega que su obligación no se extiende a cubrir ese costo. Expone que la fianza de pago solamente garantiza todos los materiales que pasan a formar parte del proyecto y el equipo adquirido específicamente para la terminación de éste, siempre que fuera previsible su consunción total o sustancial. Para ello, Newport sugiere que tomemos en consideración que el equipo pierde utilidad para el contratista del proyecto por lo que no debe estar cubierto por la fianza de pago.

Sobre esto, debemos señalar que no existe un lenguaje en la fianza que limite así el tipo de material cubierto y que la jurisprudencia citada por la parte peticionaria no es vinculante. Además, no podemos compartir ese criterio ya que, al igual que una grúa, los andamios y el encofrado son parte de lo que hace posible la obra y la fianza, independientemente de que se consuman o no en la obra. Por ejemplo, la grúa del caso de Goss no es un material a ser consumido completamente en la obra.

Precisamente, a través del uso de este equipo se aporta a la terminación de la obra conforme al contrato de construcción. El equipo arrendado fue utilizado en la obra y sin el mismo, la obra no se habría terminado, por lo que, sin duda, es parte de los materiales que cubre la fianza, fueran consumidos completamente en ella o no. Como indicáramos, la doctrina vigente utiliza una postura liberal en cuanto a la interpretación que conllevan los

contratos de fianza. En ese sentido, es natural pensar, luego de examinar la fianza de pago en controversia, que Newport se comprometió a cubrir toda factura relacionada con los materiales utilizados para cumplir con el contrato de obra, incluyendo los andamios y el encofrado, así como su valor en la lista de haber sido perdidos o no devueltos.

No encontramos razón alguna que impida que una fianza de pago cubra la pérdida del equipo alquilado. Como indicáramos anteriormente, ya hemos resuelto que la fianza cubre los cánones de arrendamiento del material alquilado y su transportación. Por lo tanto, al amparo del mismo análisis sostenemos que la fianza debe cubrir la pérdida del equipo alquilado.

III

Nos resta considerar si el Tribunal de Apelaciones erró al confirmar la imposición de honorarios de abogado contra Newport. Entendemos que no.

La Regla 44.1(d) de Procedimiento Civil, 32 L.P.R.A. Ap. III. R. 44.1(d), rige la imposición de honorarios de abogado. La misma establece lo siguiente:

> En caso que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable, el pago de una suma por concepto de honorarios de abogado que el tribunal entienda corresponda a tal conducta.

Un tribunal deberá imponer una suma por concepto de honorarios de abogado a una parte que, por sí o mediante

su representación legal, haya actuado con temeridad o frivolidad. La conducta que amerita la imposición de honorarios de abogado es cualquiera que haga necesario un pleito que se pudo evitar, o gestiones evitables. Ramírez v. Club Cala de Palmas, 123 D.P.R. 339 (1989).

El propósito de la imposición de honorarios de abogado en casos de temeridad es "establecer una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito." Fernández v. San Juan Cement Co., Inc., 118 D.P.R. 713 (1987).

El Tribunal de Primera Instancia indicó que Newport, entre otros, ha "dilatado este litigio impidiendo que Andamios pueda recobrar su equipo y cobrar su acrecencia" [sic]. Apéndice a la página 82. La determinación de si una parte ha actuado o no con temeridad descansa en la discreción del tribunal, por lo que sólo intervendremos cuando surja de tal actuación un claro abuso de discreción. Al analizar el expediente en su totalidad, entendemos que Newport fue temeraria en la tramitación de las cuestiones planteadas, tal y como determinaron el Tribunal de Apelaciones y el Tribunal de Primera Instancia.

IV

Por los fundamentos anteriormente esbozados, se confirma la sentencia del Tribunal de Apelaciones.

Se dictará Sentencia de conformidad.


Rafael L. Martínez Torres
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Andamios de Puerto Rico, Inc.<br><br>    Demandante-Recurrida<br><br>v.<br><br>JPH Contractors, Corp. Rafael Ortiz Pérez, Maribel Pérez y la Sociedad Legal de Gananciales que juntos componen; Municipio de Juana Díaz, representado por su Honorable Alcalde Ramón Hernández Torres, Compañía Aseguradora ABC; John Doe y Richard Roe; y Fulano de Tal<br><br>    Demandados<br><br>Newport Bonding & Surety Company<br><br>    Demandada-Peticionaria | CC-2007-1067 | |

SENTENCIA

En San Juan, Puerto Rico, a 8 de julio de 2010.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, se confirma la sentencia del Tribunal de Apelaciones.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez disiente con opinión escrita, a la que se unen el Juez Presidente señor Hernández Denton y la Jueza Asociada señora Fiol Matta.


                    Aida I. Oquendo Graulau
                 Secretaria del Tribunal Supremo

| | |
|---|---|
| Andamios de Puerto Rico, Inc.<br>      Demandante-Recurrida<br>          v.<br>JPH Contractors, Corp. Rafael Ortiz Pérez, Maribel Pérez y la Sociedad Legal de Gananciales que juntos componen; Municipio de Juana Díaz, Representado por su Honorable Alcalde Ramón Hernández Torres; Compañía Aseguradora ABC; John Doe y Richard Roe; y Fulano de Tal<br>      Demandados<br>Newport Bonding & Surety Company<br>      Demandada-Peticionaria | CC-2007-1067 |

Opinión disidente emitida por la Juez Asociada señora Rodríguez Rodríguez a la que se une el Juez Presidente señor Hernández Denton y la Jueza Asociada señora Fiol Matta

San Juan, Puerto Rico, a 8 de julio de 2010

La controversia traída ante nuestra consideración en esta ocasión requería que delimitáramos el ámbito de cubierta de una fianza de pago que garantiza un contrato de obra pública y resolver si ésta cubría el valor de lista de unos equipos arrendados y no devueltos por el contratista de la obra. Más allá de delimitar el ámbito de la fianza emitida en este caso, la Mayoría descansa en el aforismo de la "interpretación liberal de la fianza", y transforma la fianza de pago –la cual garantiza el pago de la labor y los materiales utilizados en la obra– en un seguro general de indemnización de todos los daños y perjuicios que puedan sufrir aquellos que ponen trabajo o

materiales en la obra afianzada. No puedo avalar con mi voto dicha interpretación, por lo que respetuosamente disiento.

## I.

En el año 2002 la codemandada JPH Contractors Corp. (en adelante "JPH") suscribió un Contrato de Construcción con el Municipio de Juana Díaz (en adelante "el Municipio"). Bajo dicho contrato, JPH se obligó a la construcción de nuevas gradas en el Parque Atlético Norma Pérez Franceschi de dicho municipio, por el precio ajustado de $258,710.00. El precio del contrato incluía el costo de equipo y materiales, los seguros requeridos y la mano de obra necesaria para realizar el proyecto.

Como parte de los requisitos de ley, el Municipio exigió a JPH que tramitara la obtención de una fianza de ejecución y pago (Performance and Payment Bond) a su favor, la cual garantizara la terminación de la obra y el pago de materiales y mano de obra utilizados en la construcción del proyecto. En consecución de dicho fin, JPH y Newport Bonding & Surety Company (en adelante "Newport" o "la peticionaria") convinieron un contrato de fianza de ejecución y pago por la suma total de $258,710.00 a favor del Municipio, el cual cumplía con los requerimientos de ley.

Durante la construcción de la obra, JPH tomó en arrendamiento a Andamios de Puerto Rico Inc. (en adelante

"Andamios") determinado equipo de encofrado[3] y andamiaje. Como parte del contrato de arrendamiento entre JPH y Andamios, el primero se obligó a pagar el canon de arrendamiento correspondiente y, además, a indemnizar a Andamios por el valor de lista de aquellos equipos arrendados que no fueran devueltos. Igualmente, en dicho contrato JPH se obligó a pagar cualquier daño que pudiese sufrir el equipo arrendado durante la construcción de la obra, aun cuando éstos fueran ocasionados por causas naturales.

Así las cosas, JPH incumplió sus obligaciones con Andamios. Por dicha razón, Andamios presentó una demanda en el Tribunal de Primera Instancia contra JPH, el Municipio, Newport, y los esposos Rafael Ortiz Pérez, Maribel Pérez y la sociedad legal de gananciales compuesta por éstos, como únicos accionistas de JPH. En la demanda, Andamios alegó que JPH no cumplió con su obligación de pagar los cánones de arrendamiento convenidos, los que al momento de la presentación de la demanda ascendían a $5,790.96. Reclamó, además, que se le pagaran $21,184.73 por concepto del valor de lista de los equipos arrendados, pues éstos no fueron devueltos. En relación con la peticionaria Newport, alegó que ésta había emitido una fianza de pago y ejecución a favor del

---

[3] El encofrado es un molde formado con tablero o chasis de metal, en el que se vacía el hormigón hasta que fragua, y que se desmonta después. Diccionario de la Lengua Española, Real Academia Española, 22da edición, 2001.

Municipio, por lo cual respondía solidariamente con los demás demandados "por haber emitido la fianza de construcción que beneficia a Andamios".

JPH, el Municipio y Newport contestaron la demanda, levantando varias defensas afirmativas.[4] Luego de varios incidentes procesales, las partes llegaron a un acuerdo preliminar. Para ese momento, la deuda por concepto de renta del equipo arrendado ascendía a $11,581.92. El Municipio, en cumplimiento de su obligación bajo el artículo 1489 del Código Civil, 31 L.P.R.A. sec. 4130, consignó dicha cantidad del retenido de JPH, el cual ascendía a $13,385.00 luego de deducirse cargos por atrasos y patentes municipales. A cambio de dicha consignación, Andamios desistió de la demanda en contra del Municipio. Por otro lado, JPH se obligó a devolver el equipo arrendado, el cual se encontraba alegadamente en un almacén cerca del proyecto. Andamios se reservó el derecho de proseguir el pleito en contra de JPH, Newport y los esposos Ortiz-Pérez de no devolverse el equipo arrendado.

El equipo arrendado no fue devuelto por JPH, por lo que Andamios presentó una solicitud de sentencia sumaria en contra de éste, Newport y los esposos Ortiz-Pérez. En la misma, solicitó que los demandados solidariamente le pagaran el valor de lista de los equipos arrendados. En

---

[4] Los esposos Rafael Ortiz Pérez, Maribel Pérez y la sociedad legal de gananciales compuesta por éstos no contestaron la demanda incoada, por lo que se les anotó la rebeldía.

relación con Newport, alegó que siendo Andamios beneficiario de la fianza emitida, dicha garantía cubría el importe de materiales, equipo y herramientas utilizados en la obra, por lo que la fiadora venía obligada a cubrir dicha acreencia. Solicitó, además, que se le concedieran $1,500.00 en concepto de honorarios de abogado por la alegada temeridad de los demandados en dilatar los procedimientos, evitando que Andamios recobrara el equipo o cobrara su acreencia. Por último, solicitó que una vez fuera final y firme dicha sentencia, se liberaran los fondos consignados por el Municipio por concepto del arrendamiento del equipo arrendado no devuelto.

Newport se opuso a la solicitud de Andamios y solicitó sentencia sumaria a su favor. Alegó que la fianza emitida sólo garantizaba el contrato de construcción otorgado entre el Municipio y JPH, no los contratos que JPH realizara para adquirir los materiales y equipo a utilizarse en la obra. Aceptó que Andamios, como suplidor de materiales, era un beneficiario de dicha fianza, pero sólo en relación con las rentas y transporte del equipo arrendado mientras éste fue utilizado en el proyecto. Por lo tanto, Newport alegó que la fianza no cubría el valor del equipo arrendado, o daños que sufriera éste mientras estuviese en el proyecto. Entendió que, tras haberse satisfecho las rentas del equipo arrendado con el retenido consignado por el

Municipio, su obligación se había extinguido, por lo que solicitó que se desestimara la demanda en su contra.

El Tribunal de Primera Instancia declaró con lugar la solicitud de sentencia sumaria presentada por Andamios. Ordenó a los demandados a pagar solidariamente $21,184.73 por el valor de lista de los equipos arrendados y $1,500.00 en honorarios de abogado por temeridad. Ordenó igualmente que se liberaran los fondos consignados por el Municipio una vez la sentencia dictada fuera final y firme.

Newport acudió al Tribunal de Apelaciones arguyendo que cometió error el foro de instancia al extender el ámbito de la fianza emitida para cubrir aspectos que no estaban previstos por ésta, como lo es la pérdida del equipo arrendado utilizado en el proyecto. Alegó que, aunque debe dársele una interpretación liberal a las fianzas emitidas en la industria de la construcción, eso no significaba que ésta garantizara aspectos que no fueron negociados. El foro intermedio confirmó la sentencia apelada al concluir que "Newport quedó subrogada en la posición del deudor principal JPH y como tal la obligación de Newport se extiende no sólo a lo adeudado por el arrendamiento del equipo utilizado . . . sino también a los perjuicios o daños sufridos por el arrendador a causa de la pérdida del equipo de construcción que se alquiló para ser utilizado en el proyecto." El foro intermedio entendió que el contrato

de arrendamiento quedó igualmente afianzado por la garantía emitida por Newport a favor del Municipio y añadió que la interpretación de la fianza esgrimida por Newport era restrictiva, forma de interpretación que había sido ya abandonada en esta jurisdicción. Por último, el Tribunal de Apelaciones confirmó la imposición de honorarios de abogado por temeridad por entender que no había indicio de abuso de discreción por parte del foro apelado, por lo que no se justificaba la modificación de dicho dictamen.

Inconforme, Newport acudió a este Foro alegando, en síntesis, que erró el Tribunal de Apelaciones al resolver que la fianza de pago emitida cubre el valor de lista de los equipos arrendados y no devueltos por JPH.[5]

---

[5] Los errores, según apuntados por la peticionaria, son los siguientes:

1) Erró el Honorable Tribunal de Apelaciones al confirmar la sentencia emitida por el Tribunal de Primera Instancia e imponerle responsabilidad a Newport por la pérdida de equipo alquilado y no devuelto por JPH Contractors, toda vez que la misma excede el alcance de la fianza prestada.

2) Erró el Honorable Tribunal de Apelaciones al confirmar la sentencia emitida por el Tribunal de Primera Instancia y concluir que Newport garantizó el contrato de arrendamiento de los andamios, cuando es claro que el contrato que se afianzó fue el de construcción.

3) Erró el Honorable Tribunal de Apelaciones al confirmar la sentencia emitida por el Tribunal de Primera Instancia y condenar a Newport al pago de honorarios de abogado por temeridad, toda vez que se trata de litigación bona fide de una controversia novel que no ha sido resuelta expresamente por este Honorable Tribunal Supremo.

**II.**

La Opinión mayoritaria resuelve que, puesto que Newport se obligó frente al dueño de la obra "a pagar toda factura de materiales requerida para la realización del contrato de obra" eso incluye el "valor del equipo alquilado y no devuelto, porque se trata de material utilizado en la realización de la obra y para la ejecución de la misma". Según la Mayoría, "[d]e no haberse alquilado ese equipo, se hubiese tenido que invertir en la compra de esos materiales para realizar la obra". Se añade que "[d]el lenguaje expreso en la fianza nos queda claro que Newport es responsable de las cuentas de los materiales necesarios para cumplir con el contrato". Concluye indicando que "[l]a deuda surge de una obligación entre el materialista y el contratista, por lo que es razonable, conforme a una interpretación liberal del contrato de fianza, concluir que la fianza cubre el costo del equipo perdido o no devuelto".

De esta manera, por demás simplista, la Mayoría resuelve que todo equipo utilizado en la consecución de una obra se trata de materiales para efectos de una fianza de pago, por lo que está cubierta por ésta. Así, la Opinión resuelve –sin discusión alguna– una asunto al cual tratadistas de la talla de Appleman[6] y Couch[7]

---

[6] El tratado de Appleman dedica más de veinte páginas a discutir solamente la teoría de la consunción que más

dedican varias páginas de sus respectivos tratados a deslindar: qué se considera materiales cubiertos por una fianza de pago y qué se considera equipo que, aunque se utiliza para construir la obra, no está cubierto por la fianza pues es propiedad del contratista que puede utilizarse no sólo en la obra afianzada, sino en innumerables otras obras. Es decir, mediante la decisión emitida durante el día de hoy, el Tribunal concede una nueva garantía o seguro de indemnización a los suplidores de materiales sobre todo el equipo, herramientas e instrumentos que los contratistas hayan adquirido, siempre que se haya utilizado de alguna manera en la obra afianzada, ya que éstos "facilitan la ejecución de la obra [por lo que] deben estar contenidos dentro de la fianza de pago".

Ciertamente dicho resultado, el cual es producto de una exposición imprecisa del derecho aplicable, se revela como uno desacertado e injusto para los participantes de la industria de la construcción y no toma en consideración el objetivo y función principal de las fianzas de pago. Antes de exponer cuál es el resultado

---

adelante se expone y más de diez secciones de su tratado a discutir los materiales y equipos que los tribunales estadounidenses han determinado que están o no cubiertos por fianzas de pago. *Véase* 10 *Appleman, Insurance Law and Practice*, 5941 et.seq. (Supl. 2008).

[7] El tratado de Couch dedica 122 secciones a discutir los materiales y mano de obra que cubren las fianzas de pago, a través de las distintas jurisdicciones estatales y la jurisdicción federal. *Véase* L. Russ, T. Segalla, *Couch on Insurance*, 3ra Ed., Thomson-West, 2005, Vol. 11, secs. 165:35-165:57.

correcto de la controversia que tenemos ante nuestra consideración, paso a repasar la figura de la fianza y su utilización en la industria de la construcción.

**III.**

La fianza es una relación jurídica obligacional a través de la cual un sujeto de derecho se obliga a pagar o a cumplir por un tercero de no hacerlo éste. Art. 1721 del Código Civil, 31 L.P.R.A. sec. 4871. Se trata de una obligación accesoria, pues actúa como una garantía de una obligación principal, por lo cual no puede existir de aquella no ser válida. Art. 1723 del Código Civil, 31 L.P.R.A. sec. 4873. El fiador, quien puede actuar a título oneroso o gratuitamente, puede obligarse a menos pero no a más que el deudor principal, tanto en la cantidad como en lo oneroso de las condiciones. Arts. 1722 y 1725 del Código Civil, 31 L.P.R.A. secs. 4872 & 4875. *Véase también*, *Luan Investment Corp. v. Rexach Construction Co., Inc.*, 152 D.P.R. 652, 661 (2000). La fianza siempre debe ser expresa y no puede extenderse a más de lo contenido en ella, aunque eso no implica que ésta deba interpretarse restrictivamente a favor del fiador. Art. 1726 del Código Civil, 31 L.P.R.A. sec. 4876; *Ulpiano Casal, Inc. v. Totty Manufacturing Corp.*, 90 D.P.R. 739, 744-45 (1964).

La mayoría de las controversias relacionadas con fianzas que hemos atendido anteriormente versan, precisamente, sobre fianzas en la industria de la

construcción. *Véase*, *Ferrer v. Alliance Company of P.R., Inc.*, 93 D.P.R. 1, 2 (1966). Debido a la naturaleza de dicha industria, la fianza es utilizada como garantía entre los principales actores de las obras de construcción, entre los que se encuentran el dueño de la obra, el contratista y los suplidores de materiales y mano de obra. Como norma general, tanto en obras públicas como privadas, el dueño de la obra exige del contratista que tramite una fianza que garantice la terminación de la obra en caso de abandono por parte de éste ("Performance Bond")[8] y el pago de materiales y mano de obra en caso de que el contratista no cumpla sus obligaciones con éstos ("Payment Bond"). En ambos casos,

---

[8] La Opinión mayoritaria establece que en el caso de una fianza de ejecución "la fiadora garantiza al dueño de la obra que el proyecto que el contratista va a ejecutar, . . ., se realizará de acuerdo al contrato de construcción, o pagará los daños incurridos hasta el límite de dinero establecido en la fianza". Esto es un error mayúsculo que denota la confusión de la Mayoría entre una fianza y un seguro de indemnización. Las fianzas de ejecución, como norma general, no indemnizan "por los daños incurridos". Éstas garantizan la ejecución del proyecto de acuerdo a los términos del Contrato de Obra, por lo que cuando el contratista incumple, la compañía fiadora cumple con dicha obligación. Normalmente, la compañía fiadora puede cumplir con dicha obligación de cuatro (4) maneras: 1) estimar el costo de la obra que queda sin terminar, y pagar –de acuerdo a las certificaciones que existan– el remanente de la obra hasta el límite de la fianza; 2) financiar al principal o contratista para que éste termine la obra; 3) permitir que el dueño de la obra consiga un nuevo contratista para que complete la obra y supervisar la ejecución de ésta; ó 4) asumir por sí misma la ejecución de la obra hasta su terminación de acuerdo al Contrato de Obra. L.R. Moelmann, M. Horowitz, K.L. Lybeck, *The Law of Performance Bonds*, 2nd Ed., Chicago, American Bar Association, 2009, págs. 462-64. Por lo tanto, los pagos que desembolsa la fiadora no son por daños, sino en cumplimiento de la obligación que dejó de realizar el contratista.

la fianza garantiza el contrato de obra, el cual generalmente es adherido al contrato de fianza, por lo que se presume el conocimiento de las cláusulas contenidas en éste por parte de la compañía fiadora. De esta manera, dicho contrato obliga a la fiadora, aunque no necesariamente al mismo nivel que al contratista. *Véase*, *e.g.*, *Olazábal v. U.S. Fidelity & Guaranty Co.*, 103 D.P.R. 448, 463 (1975); *Luan Investment Corp. v. Rexach Construction Co., Inc.*, *supra*; *Municipio de San Juan v. Stadium & Coliseum Operators, Inc.*, 113 D.P.R. 490, 493-94 (1982).

Como norma general, en casos de contratos de obra a precio alzado, el precio que paga el dueño al contratista incluye los materiales y la mano de obra a utilizarse, por lo que es natural que el dueño se asegure de que el contratista satisfaga los créditos de los suplidores de materiales y de los obreros de la construcción a través de la exigencia de una fianza de pago. El propósito de una fianza de pago ("Payment Bond") es garantizarle al dueño de la obra el pago de los materiales y la mano de obra utilizados para la terminación del proyecto, en caso de que el contratista falle en así hacerlo. *Véase* S.G.M. Stein, *Construction Law*, New Jersey, Matthew Bender & Company, Inc., 2008, Vol. 5, sec. 17.01, pág. 17-5. El dueño de obra tiene interés en el pago de las deudas de los suplidores, pues sobre él recae una responsabilidad limitada de satisfacer éstas, hasta el monto de lo que

deba al contratista al momento en que le exigen el pago. *Véase* Art. 1489 del Código Civil, 31 L.P.R.A. sec. 4130. *Véase además*, *Montalvo & Comas Electric Corp. v. E.L.A.*, 107 D.P.R. 558, 563 (1978); *Ferrer v. Alliance Company of P.R., Inc.*, *supra*, págs. 9-10. Por otro lado, puesto que en Puerto Rico los créditos de los suplidores de materiales no constituyen un gravamen sobre la obra construida como ocurre en varios estados de los Estados Unidos, la fianza de pago funciona como una protección a aquellos que suplen trabajo y materiales en una obra y luego no les son satisfechos sus créditos. *Aníbal L. Arsuaga, Inc. v. La Hood Constructors, Inc.*, 90 D.P.R. 104, 118 (1964).

En el caso de las obras públicas, la obligación del contratista de prestar una fianza de pago a favor del Estado Libre Asociado de Puerto Rico proviene del artículo 1 de la Ley Núm. 388 del 9 de mayo de 1951 (Ley 388). *Véase* 22 L.P.R.A. secs. 47-60. Esta ley es similar a la antigua Ley Miller ("Miller Act") adoptada por el Congreso de los Estados Unidos, la cual igualmente requería la prestación de fianzas en todo contrato para la construcción, reparación o alteración de un edificio u obra pública federal.[9] *Véase*, *Jiménez y Salellas, Inc. v. Maryland Casualty Co.*, 92 D.P.R. 207, 212 (1965).

---

[9] Casi todos los estados y Puerto Rico adoptaron leyes similares a la Ley Miller. Esta ley, que se encontraba codificada en el 40 U.S.C. sec. 270(a) et seq., fue revisada sin cambios sustantivos por la Ley Pública 107-217 del 21 de agosto de 2002. Ahora aparece codificada en 40 U.S.C.S. secs. 3131-34.

*Véase también*, 40 U.S.C.S. secs. 3131-34. La Ley 388 obliga al contratista a la prestación de una fianza que cubra: 1) **el pago** a los obreros y empleados del contratista de los sueldos y jornales que devenguen en la obra y 2) **el pago**, a las personas que vendan, suplan o entreguen equipo, herramientas y materiales para la obra, del precio o importe de los materiales, equipos y herramientas suplidos, vendidos o entregados. *Véase* Art. 2 de la Ley 388, 22 L.P.R.A. sec. 48. Dicha obligación del contratista surge cuando realiza contratos de obra con los departamentos, agencias e instrumentalidades del E.L.A., así como con los municipios. *Véase* Art. 12 de la Ley 388, 22 L.P.R.A. sec. 58.

En caso de que el contratista incumpla con el pago a suplidores o subcontratistas, éstos están legitimados para exigir el pago de sus créditos directamente a la compañía fiadora. *Véase Jiménez y Salellas, Inc. v. Maryland Casualty Co.*, *supra*, págs. 209-10. En el caso de las obras públicas, dicha legitimación surge del artículo 5 de la Ley 388, que permite a los obreros a los que se les deban sueldos o jornales y a los materialistas a los cuales no se les haya pagado el total del importe de los materiales o equipos suplidos para la obra, instar acción contra el contratista y la fiadora de éste bajo el contrato de fianza. *Véase* Art. 5 de la Ley 388, 22 L.P.R.A. sec. 51.

Además, puesto que los suplidores de materiales y subcontratistas no son parte del contrato de fianza que garantiza el contrato de obra, se estima que la obligación asumida por la compañía fiadora de pagar toda la mano de obra y materiales necesarias para la construcción del proyecto constituye una estipulación a favor de tercero, por lo cual aquellos que hayan puesto mano de obra o materiales en la obra tienen derecho a reclamar directamente a la fiadora. *Aníbal L. Arsuaga, Inc. v. La Hood Constructors, Inc.,* supra; *D'All Concrete Mix, Inc., v. Raúl Fortuño, Inc.,* 114 D.P.R. 740, 742-43 (1983). Igualmente, la Ley 388 considera dicha obligación como una estipulación a favor de tercero, pues exime a empleados, obreros y suplidores de materiales, equipo y herramientas del requisito de notificar la aceptación de la fianza de pago emitida a su favor.[10] *Véase* Art. 11 de la Ley 388, 22 L.P.R.A. sec. 57.

En relación con la controversia que tenemos ante nuestra consideración, sólo en *Goss v. Structural Concrete Products,* 92 D.P.R. 391 (1965), nos habíamos enfrentado a la tarea de delimitar el ámbito de cubierta de los materiales y la mano de obra por la que responde una fianza de pago. En dicho caso, resolvimos que una

---

[10] El artículo 1209 del Código Civil establece en su segundo párrafo: "[s]i el contrato contuviere alguna estipulación en favor de un tercero, éste podrá exigir su cumplimiento, *siempre que hubiese hecho saber su aceptación al obligado antes de que haya sido aquella revocada*". 31 L.P.R.A. sec. 3374 (Énfasis suplido). La Ley 388 exime a los obreros y suplidores de materiales del requisito de notificar la aceptación de la fianza.

fianza de pago de materiales y mano de obra cubre la renta y transporte de determinado equipo que se utilice en una obra de construcción; en aquella ocasión se trataba de una grúa. Citando jurisprudencia estadounidense, tanto federal como estatal, y reiterando la interpretación liberal que merecen estas fianzas según establecido en *Cristy & Sánchez v. E.L.A.*, 84 D.P.R. 234 (1961), dictaminamos que la renta y transporte de equipo puede ser considerado mano de obra o materiales, los cuales estarán cubiertos por la fianza de pago, siempre que se utilicen en la realización de la obra. *Id*. en la pág. 395.

Empero, en aquella ocasión no resolvimos si la fianza de pago de materiales cubre obligaciones adicionales al pago de renta y transporte, contraídas por el contratista en el arrendamiento de equipos utilizados en la obra, como lo es el pago del valor de lista del equipo arrendado en caso de éste perderse. Para evaluar dicha controversia, en primer lugar debe examinarse el contrato de fianza de pago convenido por el contratista JPH y la fiadora Newport. De igual manera, aunque coincido con la Opinión mayoritaria en que la jurisprudencia federal y estatal sobre la Ley Miller y las leyes estatales similares a ésta no es vinculante para este Tribunal, ya anteriormente habíamos expresado que es altamente persuasiva, pues la mayoría de las fianzas utilizadas en la industria de la construcción en

Puerto Rico son copias de las fianzas utilizadas en los Estados Unidos y nuestra Ley 388 tiene su origen en la Ley Miller. *Jiménez y Salellas, Inc. v. Maryland Casualty Co., supra*, pág. 212. Por lo tanto, en lugar de obviar dicha jurisprudencia, examinaré la normativa que han seguido aquellas jurisdicciones que se han enfrentado a controversias semejantes a la que tenemos ante nuestra consideración. Veamos.

**IV.**

**A.**

El contrato de fianza convenido entre JPH y Newport indica, en lo pertinente, como sigue:

> WHEREAS, Contractor [JPH] has by written agreement dated _____ entered into a contract with Owner [Municipio] for "CONSTRUCCION DE NUEVAS GRADAS PARA EL PARQUE ATLETICO NORMA PEREZ FRANCESCHI (SUBASTA 2002-2003 PROYECTO #001." in accordance with drawings and specifications prepared by _____ which contract is by reference made a part hereof, and is hereinafter referred to as the Contract.
> . . .
> The performance and payment bonds furnished in conjunction with this construction contract guarantee the physical completion of the work and **the payment of all labor and material bills incurred in the performance of the contract.**
> (Énfasis suplido).

El contrato de fianza estipulado entre las partes garantizaba el contrato de obra que obligaba al Municipio de Juana Díaz como dueña de la obra y a JPH como contratista. Como surge del texto de la fianza, el contrato de obra se hizo formar parte del contrato de fianza, por lo que se presume el conocimiento por parte de la fiadora Newport de sus disposiciones. Dicho

contrato, no obstante, fue el único mencionado y adherido al contrato de fianza, por lo que toda otra obligación de Newport debe surgir del texto de la fianza emitida. Es decir, no surge del texto de la fianza el afianzamiento de contratos adicionales al de obra.

Según el texto de la fianza, Newport emitió una fianza conjunta de ejecución y pago. En su vertiente de fianza de pago, Newport se obligó a pagar **todas las facturas de mano de obra y materiales utilizados en la ejecución del contrato de obra.** La obligación contraída por Newport bajo dicho contrato cumple con el objetivo primordial de este tipo de fianza y con la obligación impuesta por la Ley 388: **el pago de los materiales y mano de obra utilizados en la consecución del contrato de obra en caso de que el contratista falle en cumplir con sus obligaciones.** Sin embargo, no existe en el texto de la fianza lenguaje que indique la intención de Newport de cubrir otras obligaciones además del pago de todos los materiales y mano de obra utilizada en la construcción de la obra. Por lo tanto, la interrogante a la cual nos enfrentamos es determinar si la pérdida de equipo arrendado para ejecutar la obra está incluida en la frase "all labor and material bills incurred in the performance of the contract" y por lo tanto está garantizada por la fianza de pago.

Varios tribunales estadounidenses se han enfrentado directamente a la controversia de si una fianza de pago

debe cubrir la pérdida de equipo arrendado, llegando en ocasiones a resultados contrarios. Por un lado, algunos tribunales han resuelto que la fianza de pago debe cubrir dicha obligación, pues ésta se debe interpretar liberalmente a favor de aquellos que han puesto labor y materiales en la ejecución de la obra. La mayoría de los tribunales que han llegado a dicha solución se basan en la decisión del Tribunal de Apelaciones de Estados Unidos para el Quinto Circuito en *U.S. ex rel. Llewellyn Machinery Corp. v. National Surety Corp.*, 268 F.2d 610 (5th Cir. 1959). En *National Surety*, se trataba de una fianza bajo la Ley Miller en la cual el contratista general arrendó un equipo de construcción por el que se obligó a pagar un canon de $1,200.00 mensuales por el uso del equipo y además "asumía toda la responsabilidad por daños o la pérdida del mencionado equipo". El equipo fue enviado por barco a Las Bahamas donde sería utilizado. El barco de transporte se hundió, perdiéndose el equipo arrendado en el mar. El dueño del equipo arrendado solicitó a la fiadora el pago del valor de éste. La fiadora, sin embargo, arguyó que cubrir dichos riesgos rebasaba las obligaciones contraídas por ésta bajo la Ley Miller.

El Tribunal de Apelaciones de Estados Unidos para el Quinto Circuito resolvió que la fianza de pago cubría la pérdida del equipo arrendado. Aunque estableció que no había autoridades que apoyaran dicha solución, el

Tribunal entendió que debía prestársele una interpretación liberal a las fianzas prestadas bajo la Ley Miller. Arguyó que el contratista arrendatario se benefició de un canon de arrendamiento módico por lo que se entendía que, a cambio de dicho beneficio, éste asumió el riesgo de la pérdida del equipo. La decisión contó con el disenso del entonces Juez Presidente Hutcheson quien criticó a la mayoría por utilizar una interpretación tan liberal de la fianza bajo la Ley Miller que convirtió ésta en un seguro general de indemnización hasta el monto de la fianza, sin límite o consideración alguna. *Id.*, pág. 612. Aun con dicho disenso, esta decisión ha sido invocada por algunos tribunales federales inferiores y estatales. *Véase*, *Wyatt & Kipper Engineers, Inc. v. Ramstad Construction Co.*, 194 F. Supp. 379 (D. Ala. 1961); *R.J. Russo Trucking & Excavating, Inc. v. General Insurance Company of America*, 169 A.D. 2d 239 (N.Y. 1991); *Conesco Industries, Ltd. v. St. Paul Fire and Marine Insurance Company*, 210 A.D. 2d 596 (N.Y. 1994).

Por otro lado, varios tribunales federales y estatales han seguido otro derrotero al enfrentarse a este tipo de controversia, resolviendo que una fianza de pago no cubre pérdidas de equipo arrendado, excepto que el equipo fuera "consumido" en el proyecto y este dato fuera razonablemente previsible por el suplidor de materiales al momento de establecer la obligación.

Dichos tribunales comparan la pérdida de equipo arrendado a la situación en que el contratista adquiere mediante venta equipo para la construcción de la obra, pues en ambas situaciones se reclama a la fiadora el precio total del equipo utilizado en la obra. Los tribunales federales han sido consistentes en establecer que si el equipo adquirido mediante venta puede considerarse "materiales", entonces debe entenderse cubierto por la fianza de pago. Por el contrario, si el equipo se considera capital o propiedad del contratista, la fianza de pago no cubre dicha acreencia. *Véase*, *U.S. ex rel. Sunbelt Pipe Corporation v. U.S. Fidelity and Guaranty Company*, 785 F. 2d 468, 470 (4th Cir 1986).

La norma federal bajo la Ley Miller es que se considerarán "materiales" aquellas piezas, equipo y aparatos que sean necesarios para, y que sean totalmente consumidos en, la ejecución de la obra en cuestión. 10 *Appleman, Insurance Law and Practice*, Sec. 5941 (Supl. 2008); L. Russ, T. Segalla, *Couch on Insurance*, 3ra Ed., Thomson-West, 2005, Vol. 11, sec. 165:42-165:52; *Continental Casualty Co. v. Clarence L. Boyd Co.*, 140 F.2d 115, 116 (10th Cir. 1944). *Véase también*, E. Gallagher, *Payment Bond Manual,* Chicago, American Bar Association, 1995, págs. 30 y 33. Además, la fianza cubrirá reparaciones que son incidentales y económicas en relación con el valor del equipo y se compensará sólo por el uso y desgaste ordinario del mismo. *Appleman, supra,*

Sec. 5948; *Continental Casualty Co.v. Clarence L. Boyd Co., supra*; Gallagher, *op cit.*, pág. 35. Al hablarse de consumación, los tribunales han establecido que los materiales o el equipo utilizado debe adherirse a la obra o desgastarse de tal manera que resulte inservible para futuros proyectos. *Sunbelt Pipe Corporation v. U.S. Fidelity and Guaranty Company, supra; Appleman, supra,* sec. 5941, pág. 258.

Por lo tanto, si razonablemente el suplidor de los materiales prevé que el equipo adquirido será consumido a través de la obra de modo que no tenga utilidad o valor económico para el contratista luego de completarse el proyecto, éste se considerará como materiales y por lo tanto estará cubierto por la fianza de pago.[11]   Dicha consumación se iguala a que el equipo se adhirió a la obra afianzada, por lo que la fianza de pago debe cubrir el valor de ésta.   De otra parte, si luego de la construcción, se puede esperar razonablemente que el contratista remueva el equipo adquirido y lo utilice en trabajos futuros, entonces se considerará el equipo como capital del contratista, no consumido totalmente en la

---

[11] El objetivo principal de las fianzas de pago es proteger a aquellos que ponen materiales y mano de obra en el proyecto afianzado.   La previsibilidad de la consumación de determinado equipo se ve desde el punto de vista del suplidor, pues si éste razonablemente prevé que el equipo no se consumirá en la obra para la cual se adquiere, puede solicitar al contratista una garantía adicional a su crédito. Por el contrario, si éste razonablemente entiende que el equipo se va a utilizar solamente en la obra afianzada, pues es lógico que confíe en que –ante un incumplimiento del contratista– la fianza de pago lo protegerá.

obra y por lo tanto no recobrable bajo la fianza. *U.S. ex rel. Sunbelt Pipe Corporation v. U.S. Fidelity and Guaranty Company, supra. Véase también*, *Continental v. Casualty Co. v. Clarence L. Boyd Co.*, *supra; U.S. ex rel J.P. Byrne & Co. v. Fire Assoc. of Philadelphia,* 260 F.2d 541, 544 (2nd Cir. 1958)*; Moran Towing Corporation v. M.A. Gammino Construction Co.*, 363 F.2d 108, 115 (1st Cir. 1966); *U.S. ex rel. Eddie Sales and Leasing, Inc. v. Federal Insurance Company*, 634 F.2d 1050, 1051-52 (10th Cir. 1980); *U.S. ex rel. Brothers Builders Supply Company v. Old World Artisans, Inc.*, 702 F.Supp. 1561, 1566 (D. Ga. 1988).

En *Moran Towing*, *supra*, ante una controversia sobre unas barcazas de carga en la cual se reclamaba de la fiadora que cubriera los daños que éstas sufrieron al ser arrendadas y utilizadas en un proyecto por un contratista garantizado con una fianza de pago bajo la Ley Miller, el Tribunal de Apelaciones de Estados Unidos para el Primer Circuito rechazó expresamente el razonamiento del caso de *National Surety*. Dicho Tribunal no estuvo de acuerdo con el argumento esgrimido por el Quinto Circuito en relación con que el bajo costo de los cánones de arrendamiento justificaba el que la fiadora tuviese que cubrir obligaciones contraídas por el contratista que no eran razonablemente previsibles para ninguna de las partes,

incluyendo el suplidor.[12]  Por el contrario, el Primer Circuito abrazó la teoría de la consunción del equipo utilizado y concluyó que bajo ésta era razonablemente previsible para el suplidor el que las barcazas se deterioran de esa manera, por lo que la fianza de pago debía cubrir los daños reclamados.

Siguiendo a *Moran Towing*, en *Transamerica Premier Insurance Co. v. Ober*, 894 F.Supp. 471 (D. Me. 1995) – ante una controversia sobre la pérdida de un equipo arrendado consistente en varias barcazas y tuberías de dragado– el Tribunal de Distrito de Estados Unidos para el Distrito de Maine resolvió que la fianza de pago bajo la Ley Miller no cubría la pérdida de dicho equipo arrendado.  El Tribunal destacó que la prueba presentada demostró que ese tipo de equipo era normalmente reusable en la industria por lo que no era razonablemente previsible para el suplidor de materiales que ese equipo se consumiera en el proyecto. *Id*. págs. 483–84.

Igualmente, y ante unos hechos muy parecidos a los del caso de autos, la División de Apelaciones del Tribunal Supremo de New York resolvió que una fianza de pago no cubría un equipo arrendado por un contratista, el

---

[12] Dicho Tribunal indicó que "[t]he fact that the principal might have been required to include in its rental payments a sum sufficient to pay premiums to insure the equipment against casualty losses should not mean that it can cast upon the Miller Act surety responsibility not for a normal premium, but an entirely new type of insurance coverage." *Moran Towing Corporation v. M.A. Gammino Construction Co.*, 363 F.2d 108, 115 (1st Cir. 1966).

cual no fue devuelto por éste luego de ser utilizado y posteriormente se perdió. En *Harsco Corporation v. Gripon Construction Corp.*, 301 A.D.2d 90 (N.Y. 2002) se trataba del alquiler de unas formaletas de concreto que serían utilizadas en la construcción de un hospital, las cuales no fueron devueltas por el contratista a la compañía arrendadora. Ésta reclamó a la fiadora el pago del valor de las formaletas, amparándose en la fianza de pago exigida por el Estado de New York, parecida a aquella exigida por la Ley Miller. *Id*. pág. 93. El Tribunal acogió el argumento de la fiadora de que sólo debía pagar los cánones no satisfechos por el contratista y no el valor del equipo, pues no era previsible para el suplidor de materiales que dicho equipo se consumiera en el proyecto. Dicho Tribunal arguyó igualmente que una fianza de pago, aunque tiene el propósito de proteger a los suplidores de materiales, no debe convertirse en un seguro a favor de éstos contra cualquier riesgo asumido por el contratista. *Id*. pág. 97.

Como vemos, los tribunales estadounidenses están divididos en relación con la controversia ante nuestra consideración. Unos, basados en *National Surety*, entienden que la fianza de pago debe cubrir la pérdida de equipo arrendado, pues se debe realizar una interpretación liberal de ésta que cumpla el propósito de proteger a aquellos que ponen materiales y mano de obra en la construcción. Otros, al adoptar la teoría de la

consunción, entienden que los materiales y el equipo que cubre la fianza de pago son aquellos que formen parte de la estructura construida o que pueda razonablemente entenderse que pasaron a formar parte de ésta por haber sido total o sustancialmente consumidos en la misma. Así pues, la interrogante que tenemos ante nuestra consideración no es tan sencilla ni su respuesta es tan "clara" como lo expresa la Opinión mayoritaria, por lo que merecía una mayor rigurosidad en el análisis realizado.

### B.

Al resolver cuál debe ser la norma que deberíamos adoptar en relación con la presente controversia, soy del criterio que debemos hacerlo a la luz de nuestros pronunciamientos anteriores en esta área. Si bien es cierto que desde *Cristy y Sánchez v. E.L.A.*, *supra*, hemos adoptado una interpretación liberal de los contratos de fianza en la industria de la construcción, dicho enfoque doctrinario "no es carta blanca para imponer, mediante interpretación judicial, obligaciones que un fiador nunca pensó asumir". *Caguas Plumbing, Inc. v. Continental Constr., Corp.*, 155 D.P.R. 744, 754-55 (2001) citando a *García v. The Commonwealth Ins. Co.*, 118 D.P.R. 380, esc. 8 (1987). Es decir, la interpretación liberal que se realice de fianzas otorgadas por lucro no puede abstraerse de la intención de las partes al otorgar el contrato de fianza. *Id*.

Por otro lado, ya anteriormente habíamos expresado que una fianza no es un contrato de seguro. *Caribe Lumber & Trading Corp. v. Inter-American Builders, Inc.*, 101 D.P.R. 458 (1973). En *Caribe Lumber* deslindamos ambas figuras jurídicas destacando, entre otras distinciones, que en el caso del seguro los aseguradores asumen todo el riesgo, lo que supone el cobro de una prima adecuada al riesgo aceptado, mientras que en el caso de la fianza se presupone que el fiador no asume gran riesgo, pues sólo responderá subsidiariamente, en caso de que el fiado incumpla su obligación con el acreedor. *Id.* pág. 467-68. *Véase también*, J. H. Cross, *Suretyship Is Not Insurance*, 30 Ins. Couns. J. 235 (1963); E. H. Cushman, *Surety Bonds on Public and Private Construction Projects*, 46 A.B.A. J. 649, 652-53 (1960). En el contrato de fianza, el fiador no "se obliga a indemnizar a otra [persona] o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto" en éste. *Cf.* Art. 1.020 del Código de Seguros, 26 L.P.R.A. sec. 102. Por el contrario, la obligación que garantiza el fiador es específica, y su aparición en el momento en que el deudor incumple no es para indemnizar al acreedor, sino para cumplir con la obligación quebrantada.

Igualmente, al examinar el racional utilizado en *Goss v. Structural Concrete Products,* 92 D.P.R. 391 (1965), entendemos que dicho resultado es consistente con

la teoría de la consunción. En la medida en que el pago de los cánones de arrendamiento es sólo por el **uso** de la maquinaria o equipo realizado en la obra afianzada, los cánones de arrendamiento son enteramente consumidos al terminar el trabajo, pues ninguna parte de éstos benefician permanentemente al contratista. *Véase Appleman, supra,* sec. 5947, pág. 290.

Considerando el texto y el propósito de la Ley 388, además de los precedentes antes expuestos, soy del criterio que una fianza de pago que garantiza un contrato de obra cubre todos los materiales que pasan a formar parte del proyecto realizado y el equipo adquirido específicamente para la terminación de éste, siempre que fuera razonablemente previsible para el suplidor del mismo su consunción total o sustancial. La previsibilidad de la consunción debe ser directamente proporcional a la probabilidad de que el equipo pierda total o sustancialmente su utilidad o valor económico para el contratista luego de la terminación del proyecto. De ser así, el equipo debe considerarse "materiales" y por tanto ser cubierto por la fianza de pago. Por el contrario, si no fuera razonablemente previsible que el equipo sea consumido en el proyecto, puesto que la experiencia general apunta a que éste puede ser reutilizado en otros proyectos, entonces el equipo no se considerará "materiales" y no estará cubierto por la fianza de pago.

Al así resolver, rechazaría, al igual que el Tribunal de Apelaciones de Estados Unidos para el Primer Circuito, el curso decisorio esbozado por el Quinto Circuito en *National Surety*. El mero hecho de que las fianzas de pago deben interpretarse liberalmente a favor de aquellos que ponen trabajo y materiales en una obra no puede ser la zapata que sostenga la conversión de una fianza de pago en un seguro de indemnización. La fianza de pago cubre la obra a realizarse, por lo que los materiales por la que ésta responde deben convertirse en parte del proyecto o ser total o sustancialmente consumidos en la construcción de éste. Dicha garantía no puede cubrir equipo que bien podría catalogarse como capital del contratista, pues no es ese su propósito ni el de la Ley 388. Más allá de realizar una interpretación liberal de la fianza, es nuestro deber realizar una interpretación lógica, razonable y justa a la luz de la intención de las partes y el propósito legislativo.

Con el marco doctrinal anteriormente expuesto, paso a analizar los hechos del caso de epígrafe.

**V.**

En el presente caso el Tribunal de Primera Instancia dictó sentencia sumaria a favor de Andamios, ordenando a JPH, a Newport y a los esposos Ortiz-Pérez el pago solidario de $21,184.73 que corresponde al valor de lista de un equipo arrendado y no devuelto por el contratista

JPH. El Tribunal de Apelaciones confirmó dicha sentencia al concluir que la fianza de pago garantizaba el contrato de arrendamiento entre JPH y Andamios, por lo que Newport debía cumplir con su obligación de responder por su fiado. Erraron ambos foros al así actuar.

Según lo expuesto anteriormente, una fianza de pago que garantiza un contrato de obra cubre todos los materiales que pasan a formar parte del proyecto realizado y el equipo adquirido específicamente para la terminación de éste, siempre que fuera razonablemente previsible para el suplidor del mismo su consunción total o sustancial. Como bien arguye la peticionaria, no es razonablemente previsible que un equipo de andamiaje y encofrado se pierda en la construcción de un proyecto por razón de su uso. Ese tipo de equipo podría ser considerado capital del contratista, pues éste puede ser removido de la obra y utilizado en futuros proyectos.

La recurrida Andamios arguye que fue previsto que el equipo se perdería, pues en el contrato de arrendamiento suscrito por JPH y Andamios se incluyó la obligación del primero de pagar el valor de lista de los equipos arrendados de éstos perderse o no ser devueltos. Andamios falla en reconocer que la previsibilidad es función de la probabilidad de la pérdida, según la experiencia general de las partes. A pesar de que la obligación incluida en el contrato de arrendamiento es válida y obliga a JPH, no era previsible que el equipo de

andamiaje y encofrado fuera adherido a la obra o se perdiera por razón de su uso. Si bien Andamios pudo prever la pérdida del equipo arrendado al incluir una disposición a esos efectos en el contrato de arrendamiento, en todo caso dicha pérdida sería función de la culpa o negligencia del arrendatario o por caso fortuito.[13] En ninguno de esos escenarios la fiadora respondería, pues dicha pérdida no es atribuible al uso o consunción del equipo en la obra afianzada.

Además, al apoyarse en dicha cláusula para cobrar su acreencia a Newport, la recurrida pierde de perspectiva que dicha obligación surge del contrato de arrendamiento y no del contrato de obra. Las obligaciones contenidas en el contrato de arrendamiento no son oponibles a la fiadora, pues ésta no fue parte de dicho contrato, ni fue ese el contrato afianzado. El contrato garantizado mediante fianza por Newport es el de obra, no el de arrendamiento, por lo que la fiadora no queda obligada por las disposiciones de este último.

El Tribunal de Apelaciones, no obstante, parece haber favorecido la posición de la recurrida Andamios al emitir su dictamen, por lo que erró al así actuar. El foro intermedio partió de la premisa de que la fianza de pago emitida por Newport afianzaba tanto el contrato de

---

[13] Según el artículo 1453 del Código Civil, el arrendatario es responsable de la pérdida de la cosa arrendada, salvo que pruebe que no fue por culpa suya o se trate de un caso fortuito. *Véase*, *Cabinero v. Cobián Theaters*, 81 D.P.R. 960 (1960).

obra como el contrato de arrendamiento. Si bien es cierto que Andamios es beneficiaria de la fianza de pago emitida por Newport por haber arrendado equipo utilizado en la obra, la cubierta que le ampara se limita a las rentas y el transporte del equipo arrendado, según resuelto en *Goss*. El hecho de que la suplidora Andamios tenga el derecho de reclamarle directamente a la fiadora Newport el importe de las rentas y del transporte del equipo no implica que la fianza emitida cubra todas las obligaciones que asumió el contratista JPH en el contrato de arrendamiento. La fianza de pago cubre una obligación específica –el pago de la mano de obra y materiales que se hayan utilizado para la construcción de la obra– no toda otra obligación que haya asumido el contratista en la obtención de dichos materiales o equipos, salvo lenguaje expreso a esos efectos incluido en la fianza emitida. Como vimos anteriormente, la fianza emitida en este caso no incluyó obligaciones adicionales a la del pago de la mano de obra y materiales incurridos en la construcción de la obra.

La Opinión mayoritaria, sin embargo, realiza un análisis contrario al señalar que no existe un lenguaje en la fianza que limite el material cubierto por ésta a aquellos que hayan pasado a formar parte de la obra afianzada y a equipo que se haya adquirido específicamente para ésta, cuando éste se haya consumido

total o sustancialmente.[14]    Se arguye que en *Goss* resolvimos que la fianza de pago cubría las rentas y el transporte de la grúa y ésta no se consumió en dicha obra.  Concluye indicando que "[e]l equipo arrendado fue utilizado en la obra y sin el mismo, la obra no se habría terminado, por lo que, sin duda, es parte de los materiales que cubre la fianza, fueran consumidos completamente en ella o no".

En primer lugar, lo que propone la Mayoría es que la fianza de pago cubra todo gasto o factura imaginable relacionada con materiales, equipo o herramientas adquiridos por el contratista y utilizadas en la obra, independientemente de si éstos pasaron a formar parte de ésta, salvo que expresamente exista una exclusión.  El problema con ese argumento es que soslaya el hecho de que "la fianza siempre debe ser expresa y no puede extenderse a más de lo contenido en ella". Art. 1726 del Código Civil, 31 L.P.R.A. sec. 4876.  Mediante la interpretación de la Mayoría, se invierte y trastoca el precepto del Código Civil antes citado, pues ahora la fianza se extenderá a más de lo contenido en su texto para cubrir

---

[14] La mayoría parece no entender la teoría de la consunción pues expresa que "Newport sugiere que tomemos en consideración que el equipo pierde utilidad para el contratista del proyecto por lo que no debe estar cubierto por la fianza de pago". Opinión del Tribunal, pág. 18.  No se trata de que el equipo pierde utilidad para el contratista y por eso no debe estar cubierto; al contrario, por razón de que el equipo pierde toda su utilidad es que debe estar cubierto por la fianza, pues así se equipara dicha consunción con que éste pasó a formar parte de la obra afianzada.

toda factura relacionada a equipo, herramienta o material que el contratista adquiera o arriende, salvo que expresamente se excluyan dichas obligaciones.

Por otro lado, ciertamente una grúa es poco probable que se consuma total o sustancialmente en una sola obra por razón de su uso. Pero es que en *Goss* no resolvimos que la fianza de pago cubría el *valor* de la grúa, sino *los cánones de arrendamiento* en los que incurrió el contratista por el **uso** de ésta en la obra. En ese caso, conforme a la teoría de la consunción, lo que se consume son los cánones de arrendamiento mientras el equipo arrendado se utilice en la obra afianzada, razón por la cual se entienden cubiertos por la fianza de pago. Por lo tanto, la comparación realizada por la mayoría para rechazar la teoría de la consunción es, cuando menos, errada e infundada.

No obstante, esas expresiones de la Mayoría denotan la amplitud de la norma que hoy se establece. Según la Opinión del Tribunal, todo equipo que se haya utilizado en la obra, *sin el cual ésta no se habría terminado*, está cubierto por la fianza de pago. Esto quiere decir que, según la Opinión mayoritaria, el valor y los daños y perjuicios que puedan sufrir las grúas, los camiones mezcladoras, las excavadoras, camiones tanque y otro equipo pesado, los generadores eléctricos, los vehículos del contratista, todas las herramientas que utilicen los obreros de la construcción incluyendo martillos,

taladros, flotas y cubos de empañetado, entre otros, no importa el momento en que se hayan adquirido y quién sea su propietario, y cualquier instrumento, equipo o herramienta que se haya utilizado en la obra, "sin la cual ésta no se habría terminado", es recobrable bajo la fianza de pago emitida. Este resultado, definitivamente, no es producto de una "interpretación lógica, razonable y justa" de la controversia ante nuestra consideración. Op. del Tribunal, pág. 14 citando a *Goss v. Structural Concrete Products*, *supra*, pág. 395.

La fianza de pago debe cubrir todos los materiales y mano de obra que se haya utilizado para la consecución de la obra. Pero los materiales a ser cubiertos, entre los que se incluye equipo y herramientas, tienen que pasar a formar parte de la obra afianzada, que es a final de cuentas lo que la fianza garantiza. La teoría de la consunción es una herramienta útil para determinar cuándo puede considerarse que un equipo o herramienta pasó a formar parte de la obra, por lo cual debe ser cubierto por la fianza de pago. No es lógico ni razonable que se haga responsable a la fianza de pago por equipo que se perdió por culpa o negligencia del contratista y que no era previsible que fuera a perderse o consumirse por razón de su uso. No hay duda de que ese resultado convierte a la fianza de pago en un seguro de indemnización por daños a la propiedad.

Así pues, ya que en el presente caso el equipo de encofrado y andamiaje arrendado y no devuelto a Andamios no era previsible que se perdiera o consumiera por razón de su uso en la obra afianzada, es forzoso concluir que la fianza de ejecución y pago emitida por Newport no cubre el valor de lista de los mencionados equipos. Dicha fianza sólo cubría los cánones de arrendamiento y el costo del transporte del equipo hasta el lugar de la construcción. Esa acreencia, según relatamos anteriormente, fue consignada por el Municipio del retenido del contratista JPH. La obligación por la cual la fianza respondía, por tanto, quedó extinguida de manera que Newport se liberó de toda obligación frente a Andamios.[15] Procedería la revocación de la sentencia del Tribunal de Apelaciones en cuanto confirmó el dictamen del Tribunal de Primera Instancia de ordenar el pago del valor de lista de los equipos arrendados a Newport.

## VI.

La peticionaria plantea como último error que no procedía la imposición de honorarios de abogado porque no actuó temerariamente. La conducta alegadamente temeraria consistió en la negativa de Newport de pagar el valor de lista de los equipos arrendados y no devueltos a pesar de habérsele requerido de forma extrajudicial, además de haber dilatado el litigio evitando que Andamios

---

[15] La sentencia del Tribunal de Primera Instancia quedaría vigente en relación con JPH y los esposos Ortiz-Pérez a los cuales se les dictó sentencia en rebeldía.

recobrara su equipo o su acreencia. Newport aduce que la controversia que planteaba este caso –si la fianza de pago garantiza la obligación contractual contraída por el contratista de devolver los equipos arrendados o en su defecto responder por la pérdida de éstos– es una novedosa, por lo que no puede ser considerada temeraria su litigación y no proceden los honorarios impuestos. Tiene razón la peticionaria.

Como parte del ejercicio de su discreción, el tribunal goza de la facultad de imponer honorarios de abogado a la parte que haya procedido con temeridad o frivolidad de acuerdo a la Regla 44.1 de Procedimiento Civil. *Véase* Regla 44.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III. La imposición de honorarios de abogado por temeridad busca penalizar "al litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconvenientes de un pleito". *O.E.G. v. Román González*, 159 D.P.R. 401, 418 (2003) citando a *Domínguez Vargas v. GA Life*, 157 D.P.R. 690, 706 (2002). Por ser la determinación de temeridad de índole discrecional, sólo debemos intervenir con ella cuando nos enfrentemos a un caso de abuso de discreción. *Flores Berger v. Colberg*, res. 20 de mayo de 2008, 2008 T.S.P.R. 90, 173 D.P.R. ____ (2008); *Colón Santos v. Cooperativa*,

res. 25 de febrero de 2008, 2008 T.S.P.R. 32, 173 D.P.R.____ (2008).

En varias ocasiones hemos resuelto que no existe temeridad cuando lo que se plantea ante el tribunal de instancia son planteamientos complejos y novedosos que no han sido objeto de análisis por parte de este Tribunal. *Santiago Colón v. Supermercados Grande*, 166 D.P.R. 796, 821 (2006). Tampoco existe temeridad cuando existe alguna desavenencia honesta en cuanto a quién favorece el derecho aplicable a los hechos del caso. *Cándido Oliveras, Inc. v. Universal Ins. Co.*, 141 D.P.R. 900, 936 (1996); *Santos Bermúdez v. Texaco P.R., Inc.*, 123 D.P.R. 351, 356 (1989); *Santaella Negrón v. Licari*, 83 D.P.R. 887, 903-04 (1961).

La controversia a la cual nos enfrentamos en el presente caso no había sido objeto de examen por parte de esta Curia anteriormente. Los argumentos de la peticionaria a lo largo del litigio fueron consistentes con su defensa, además de estar fundamentados en la jurisprudencia estadounidense antes expuesta. Por lo tanto, su defensa no fue infundada o injustificada, ni medió obstinación en su proceder. La peticionaria tampoco desplegó una conducta temeraria que obligara a los demandantes a perseguir un pleito innecesario. Estamos ante un abuso de discreción por parte del foro primario, por lo que es forzoso concluir que éste erró al imponer honorarios de abogado por temeridad.

No obstante, la Opinión mayoritaria descansa, esta vez, en meras generalidades para concluir que "[a]l analizar el expediente en su totalidad, entendemos que Newport fue temeraria en la tramitación de las cuestiones planteadas". No se expresan cuáles son las actuaciones de la peticionaria Newport que le merecen la imposición de honorarios de abogado por temeridad. Ante una controversia novedosa, y ausente del expediente una conducta temeraria por parte de la peticionaria, erra la Mayoría al confirmar la determinación de temeridad de los foros inferiores.

**VII.**

En suma, soy del criterio que la fianza de pago y ejecución emitida por Newport no cubre el valor de lista de los equipos arrendados y no devueltos por Andamios, por no ser previsible que éstos se perdieran o consumieran por razón de su uso en la obra afianzada. Además, estimo que no procedía la imposición de honorarios de abogado a la peticionaria por tratarse de una controversia novedosa y no mediar temeridad en su proceder en los foros inferiores. Por los fundamentos antes expuestos, revocaría la sentencia del Tribunal de Apelaciones y la sentencia del Tribunal de Primera Instancia en cuanto le impone responsabilidad por el pago del valor de lista de los equipos arrendados y honorarios de abogado a Newport. Devolvería el caso a dicho foro para que continúen los procedimientos de forma compatible

con lo aquí expuesto. Por no ser ese el resultado al cual llega la Mayoría, respetuosamente disiento.


Anabelle Rodríguez Rodríguez
Juez Asociada