ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| PAN AMERICAN GRAIN CO.<br><br>Apelada<br><br>v.<br><br>JOSÉ J. VARGAS COLLADO<br><br>Apelante | KLAN202300961 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm.: BY2019CV04035<br><br>Sobre: Cobro de Dinero |
|---|---|---|

Panel integrado por su presidente, el Juez Figueroa Cabán, la Juez Brignoni Mártir y el Juez Ronda Del Toro

**Ronda del Toro, Juez Ponente**

## SENTENCIA

En San Juan, Puerto Rico, a 18 de diciembre de 2023.

Comparece el Sr. José J. Vargas Collado (Sr. Vargas Collado o Apelante) y solicita que revoquemos una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI). Por virtud de esta, el TPI resolvió que el Apelante debía realizar el pago adeudado por concepto de préstamos a Pan American Grain Co. (PAG o Apelada)

Por los fundamentos que exponemos, confirmamos la Sentencia apelada.

## I.

En el año 2007, el Sr. Vargas Collado incorporó El Roble Consultant Group, Inc. (El Roble), una corporación con fines de lucro dedicada, primordialmente, a la asesoría y consultoría ambiental. En la actualidad, el Apelante funge como presidente de dicha corporación. PAG es una corporación debidamente organizada bajo las leyes del Estado Libre Asociado de Puerto

Rico. El Presidente y Vicepresidente de PAG son el Sr. José González Freyre y el Sr. Alberto Fernández, respectivamente.

Según surge del expediente, para finales del año 2016 El Roble ofrecía sus servicios de consultoría ambiental a PAG por la cantidad de $2,000.00 mensuales, equivalentes a por lo menos 40 horas semanales. Durante este periodo, el Sr. Vargas Collado se unió junto al Sr. González Freyre y al Sr. Fernández para crear Biocann Caribbean LLC (Biocann), en una corporación de responsabilidad limitada dedicada al negocio del cannabis medicinal.

El 16 de julio de 2019 PAG presentó una demanda sobre cobro de dinero contra el Sr. Vargas Collado. La Apelada arguyó en su demanda que entre los años 2016 y 2018 le prestó al Apelante ciertas sumas de dinero ascendentes a $88,824.16. Alegó, además, que se realizaron gestiones de cobro contra el Sr. Vargas Collado, pero que estas resultaron infructuosas. El 20 de enero de 2020, luego de varios trámites procesales, el Apelante contestó la demanda. En esencia, negó las alegaciones contenidas en la demanda y sostuvo que los pagos recibidos correspondían a unos préstamos a favor de Biocann. En adición a esto, el Sr. Vargas Collado presentó una reconvención contra PAG que, eventualmente, el TPI desestimó el 27 de febrero de 2020.

El 10 de julio de 2023, luego de culminar el descubrimiento de prueba, PAG presentó una *Moción de Sentencia Sumaria*. En esta, la Apelada sostuvo los mismos hechos y argumentos esbozados en su demanda. Junto a la *Moción de Sentencia Sumaria* PAG incluyó, entre otras, copia de correos electrónicos enviados por el Sr. Vargas Collado al Vicepresidente de PAG mediante los cuales envió solicitud de préstamo, documentos identificados con la palabra "*préstamo*", copia de la transcripción

de la deposición del demandado en la que admite haber enviado los documentos y haber sido la persona que generó los documentos identificados con la palabra "*préstamo*" y copia de cheques emitidos por PAG a favor del Apelante.

El 25 de julio de 2023, el Sr. Vargas Collado presentó su *Oposición a Moción de Sentencia Sumaria*. Alegó que existía controversia de hechos en torno a los desembolsos descritos en la demanda. Además, reclama que estaban en controversia los alegados motivos para la solicitud de los préstamos, pero no expone un apoyo a ese reclamo de controversia de hechos. Junto a su *Oposición*, el Apelante presentó copia de la transcripción de las deposiciones del Sr. José González Freyre, el Sr. Alberto Fernández, la Sra. Waleska Rodríguez y el propio Sr. Vargas Collado. Además, presentó copia de algunas facturas y talonarios de pago.

Luego de evaluar las alegaciones de las partes y los documentos provistos por estas, el TPI formuló las siguientes determinaciones de hechos:

1. Vargas prestaba sus servicios profesionales bajo El Roble Consultant Group.

2. El Roble Consultant Group le daba servicios profesionales de consultoría a PAG.

3. El Roble Consultant Group cobrara una cantidad de $2,000.00 mensuales por sus servicios profesionales a PAG.

4. Vargas tenía una relación comercial con el Sr. Alberto Fernández y el Sr. José González Freyre, Vicepresidente Ejecutivo y Presidente, respectivamente, de PAG.

5. En el transcurso de la relación comercial entre, Vargas le comunicó al Sr. Fernández y al Sr. González Freyre que tenía necesidad de dinero para cubrir ciertas necesidades personales y

preguntó si se le podía prestar dinero para cubrir dichas necesidades.

6. El Sr. González Freyre y el Sr. Fernández, en representación de la parte demandante, acordaron que PAG le prestaría a Vargas el dinero que éste necesitaba para cubrir sus aludidas necesidades personales.

7. El 1 de diciembre de 2016, Vargas le envió a Jeannette Torres Blanco un correo electrónico con un documento, preparado por él y dirigido a "Alberto Fernández, Executive Vicepresidente Pan American Grain Co." Identificando como "PRESTAMO-01" por la cantidad de $3,000.00.

8. Posteriormente, Vargas le envió al Sr. Fernández los documentos que se detallan a continuación, dirigidos a "Alberto Fernández, Executive Vicepresidente Pan American Grain Co.":
   a. 19 de diciembre de 2016 – PRESTAMO-02 - $2,441.56
   b. 19 de diciembre de 2016 – PRESTAMO-03 - $1,118.53
   c. 10 de enero de 2017 – PRESTAMO-04 - $2,771.27
   d. 1 de febrero de 2017 – PRESTAMO-05 - $2,771.27
   e. 7 de febrero de 2017 – PRESTAMO-06 - $473.00
   f. 16 de febrero de 2017 – PRESTAMO-07 - $3,516.45
   g. 2 de marzo de 2017 – PRESTAMO-08 - $3,244.27
   h. 29 de marzo de 2017 – PRESTAMO-09 - $3,384.27
   i. 2 de mayo de 2017 – PRESTAMO-10 - $3,384.27
   j. 31 de mayo de 2017 – PRESTAMO-11 - $3,384.27
   k. 28 de junio de 2017 – PRESTAMO-12 - $3,384.27
   l. 29 de junio de 2017 – PRESTAMO-13 - $3,384.27
   m. 1 de julio de 2017 – PRESTAMO-14 - $3,384.27
   n. 25 de julio de 2017 – PRESTAMO-15 - $3,384.27
   o. 9 de agosto de 2017 – PRESTAMO-16 - $1,000.00

p. 27 de agosto de 2017 – PRESTAMO-17 - $3,384.27

q. 1 de octubre de 2017 – PRESTAMO-18 - $3,384.27

r. 31 de octubre de 2017 – PRESTAMO-19 – $3,384.27

s. 30 de noviembre de 2017 – PRESTAMO-20 - $3,384.27

t. 21 de diciembre de 2017 – PRESTAMO-21 -$3,384.27

u. 1 de febrero de 2018 – PRESTAMO-22 - $3,384.27

v. 28 de febrero de 2018 – PRESTAMO-23 - $3,384.27

w. 2 de abril de 2018 – PRESTAMO-24 - $3,384.27

x. 16 de abril de 2018 – PRESTAMO-25 - $5,919.11

y. 27 de abril de 2018 – PRESTAMO-26 - $3,384.27

z. 28 de mayo de 2018 – PRESTAMO-27 - $3,384.27

aa. 29 de junio de 2018 – PRESTAMO-28 - $3,384.27

9. Los documentos detallados llevaban como membrete el nombre de José J. Vargas Collado.

10. La cantidad total de dinero desembolsados por PAG como consecuencia de las solicitudes de préstamos de Vargas a PAG asciende a $86,834.16.

11. Todo el dinero solicitado por Vargas por medio de los documentos identificados como préstamos fue entregado por PAG a Vargas Collado.

12. El 9 de noviembre de 2017, Vargas le envió al Sr. Alberto Fernández un correo electrónico mediante el cual, entre otras cosas, le solicitaba al Sr. Fernández una certificación de deuda que indicara cuánto él le debía a PAG y/o sus dueños o afiliados a esa fecha. Específicamente, la comunicación enviada leía "Aprovechamos la oportunidad para solicitarle una certificación de deuda mía (José J. Vargas). Entiéndase cuánto dinero a esta fecha yo le debo a Pan American Grain y/o sus dueños o afiliados."

13. El 7 de marzo de 2018, Vargas le envió al Sr. Alberto Fernández un correo electrónico

mediante el cual, entre otras cosas, le solicitaba al Sr. Fernández una certificación de la cantidad de dinero dada a José Vargas en Calidad de préstamo para su sustento; esto porque estaba buscando alternativas de re-pago. Específicamente, la comunicación enviada leía "nos interesa saber, y solicitamos una certificación de la cantidad de dinero dada a José Vargas en calidad de préstamo para su sustento. Esto por que estaremos buscando alternativas de re-pago."

14. El 13 de marzo de 2018, PAG, a través de Jeannette Torres Blanco, le envió un reporte de contabilidad con el balance del préstamo a Vargas. El asunto o "subject" del correo leía "Balance de Préstamo".

15. El 14 de marzo de 2018, Vargas contestó el correo electrónico de la Sra. Torres agradeciéndole la información.

16. Con relación a la cantidad prestada, no se estableció una fecha cierta a partir de la cual Vargas Collado tenía que repagar la cantidad que se le prestó.

17. El 14 de junio de 2019, PAG envió una carta de cobro a Vargas Collado requiriendo el pago de lo adeudado por él a PAG.

18. Al día de hoy, Vargas Collado no ha pagado a PAG ninguna cantidad de las que le fueran otorgadas en calidad de préstamo.

El TPI encontró probado las solicitudes de préstamos ascendentes a $86,834.16, que PAG realizó los pagos, que PAG emitió los cheques dirigidos al Sr. Vargas Collado y que el propio Apelante endosó los cheques. Encontró probado el TPI, además, mediante el testimonio del Sr. Vargas Collado que este recibió la suma de $86,834.16, que PAG exigió el pago de la deuda y que el Sr. Vargas Collado no pagó la misma. Señaló el TPI que, aun cuando las partes no hubieren pactado una fecha cierta de repago, nuestro ordenamiento jurídico dictaminaba que el repago era exigible de inmediato.

A base de estas determinaciones de hecho y de derecho, el TPI declaró Ha Lugar la Moción de Sentencia Sumaria presentada por PAG. Consecuentemente, se le ordenó al Sr. Vargas Collado el pago de la suma adeudada y los intereses sobre la totalidad de la Sentencia a la tasa establecida por la Oficina del Comisionado de Seguros de Puerto Rico, ascendentes a 5.5% anual desde la fecha en que se dictó sentencia que se finiquite la deuda. Además, le impuso el pago de $5,000.00 a PAG por concepto de honorarios de abogado.

Inconforme, el Sr. Vargas Collado presentó el recurso de apelación de autos, señalando como único error del TPI el:

Emitir una sentencia sumaria existiendo innumerables controversias de hechos.

Recibida la Apelación, el 1ro de noviembre de 2023, notificado al siguiente día, le concedimos veinte (20) días a la parte apelada para presentar su posición, más no compareció, por lo que, damos por perfeccionado el recurso.

Procedemos a exponer la normativa jurídica aplicable al caso de autos.

## II.

## A.

La sentencia sumaria es un mecanismo procesal que provee nuestro ordenamiento para propiciar la solución justa, rápida y económica para aquellos litigios de naturaleza civil en los que no existe una controversia genuina en torno a los hechos materiales que componen la causa de acción que se contempla. Roldán Flores v. M. Cuebas, Inc., 199 DPR 664 (2018); Rodríguez Méndez v. Laser Eye, 195 DPR 769, 785 (2016). La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, establece los

parámetros para solicitarle al tribunal que dicte sentencia sumariamente.

En lo pertinente, la Regla 36.1 establece que: "una parte que solicite un remedio podrá, presentar una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada." 32 LPRA Ap. V, R. 36.1. A esos fines, "un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. Meléndez González et al. v. M. Cuebas, 193 DPR 100 (2015); Ramos Pérez v. Univisión, 178 DPR 200, 213 (2010). Para que una controversia de hecho sea "real, o sustancial o genuina debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario". Ramos Pérez v. Univisión, *Id*., pág. 213.

Por ser la sentencia sumaria un recurso de naturaleza excepcional, la expedición de este mecanismo descansa en la sana discreción judicial. SLG Zapata-Rivera v. J.F. Montalvo, 189 DPR 414, 430-435 (2013). El TPI es el foro que tiene ante sí la administración del caso, conoce sus particularidades y está en mejor posición para encaminar el caso hacia su disposición final. Por lo tanto, las determinaciones del foro primario merecen extrema deferencia al momento de decidir ejercer o no nuestro poder revisor. Rivera y otros v. Bco. Popular, 152 DPR 140, 155 (2000).

Ahora bien, en cuanto a la evaluación por la vía sumaria, el Tribunal Supremo ha destacado que no es recomendable utilizar la moción de sentencia sumaria en aquellos casos donde

exista controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia; incluso, cuando el factor de credibilidad es esencial y está en disputa. Ramos Pérez v. Univisión, 178 DPR 200, 219 (2010).

El Tribunal Supremo estableció el estándar especifico que debe utilizar esta Curia al revisar denegatorias o concesiones de Mociones de Sentencia Sumaria. Meléndez González et al. v. M. Cuebas, *supra*, pág. 117. A esos efectos, el Tribunal dispuso:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la regla 36 de Procedimiento Civil, supra, y la jurisdicción le exigen al foro primario; (2) revisar que tanto la Moción se Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. Roldán Flores v. M. Cuebas, *supra*, pág. 679; citando a Meléndez González et al. v. M. Cuebas, *supra*, págs. 118-119.

### B.

Es norma establecida que en Puerto Rico rige el principio de la libertad de contratación. Oriental Financial v. Nieves, 172 DPR 462 (2007). La libertad de contratación permite que las partes puedan establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarias a la ley, a la moral o al orden público. Artículo 1207 del Código Civil[1], 31 LPRA sec. 3372. Entre las fuentes de las obligaciones en nuestro ordenamiento jurídico se encuentran los contratos. Artículo 1042,

---

[1] El Código Civil de 1930 era el vigente al momento de los hechos que dan lugar a la presente causa de acción. Actualmente no está vigente, fue derogado por Ley 55-2020, Código Civil de Puerto Rico de 2020.

31 LPRA sec. 2992. El Código Civil dispone que las obligaciones que nacen de los contratos serán ley entre las partes, quienes estarán obligadas a cumplir con éstos. Artículo 1044 Código Civil, 31 LPRA sec. 2994.

Una vez las partes pactan, están obligadas a cumplir lo pactado. Los contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de los expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Artículo 1210, 31 LPRA sec. 3375. Por otro lado, el Código Civil dispone que una de las causas para extinguir las obligaciones lo es el pago o el cumplimiento. Artículo, 1110, 31 LPRA sec. 3151.

En los contratos de préstamo, una parte denominada como prestamista le entrega al prestatario alguna cosa no fungible para que use de ella por cierto tiempo y devolver otra cosa de la misma especie y calidad. Art. 1631, 31 LPRA sec. 4511. Una vez consumado el contrato de préstamo, comienza la obligación del prestatario de devolver en la fecha y lugar designado en el contrato el dinero prestado. Art. 1124 y 1125, 31 LPRA secs. 3174 y 3174. Por otro lado, dispone el Código Civil que "la validez y el cumplimiento de los contratos no pueden dejarse al arbitrio de uno de los contratantes". Art. 1208, 31 LPRA sec. 3373.

## C.

La Regla 44.1(d) de Procedimiento Civil, 32 LPRA Ap. III, rige la imposición de los honorarios de abogado. En lo pertinente, la regla establece lo siguiente:

> En caso que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable, el pago de una suma por concepto de honorarios de

abogado que el tribunal entienda corresponda a tal conducta.

Un tribunal deberá imponer una suma por los honorarios de abogado a una parte que, por si o mediante su representación legal, haya actuado con temeridad o frivolidad. Andamios de PR v. JPH Contractors, Corp., 179 DPR 503, 519-520 (2010). Se entiende que un litigante actúa con temeridad cuando "por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente a asumir las molestias, gastos, trabajo e inconveniencias de un pleito". Andamios de PR v. Newport Bonding, 179 DPR 503, 520 (2010).

De lo anterior se desprende que, cualquier conducta que haga necesario un pleito que se pudo evitar, o gestiones evitables, amerita la imposición de los honorarios. Andamios de PR v. JPH Contractors, Corp., *supra*, pág. 520. La evaluación de si ha mediado o no temeridad recae sore la discreción sana del tribunal sentenciador y solo se intervendrá con ella en casos en que ese foro haya abusado de tal facultad. SLG Flores-Jiménez v. Colberg, 173 DPR 843, 866 (2008). Al tratarse de un asunto discrecional, los tribunales apelativos no debemos intervenir con el ejercicio de esa discreción. PR Oil v. Dayco, 164 DPR 486, 511 (2005). No obstante, si se demuestra que hubo un craso abuso de discreción, que el foro de sentenciador actuó con perjuicio o parcialidad, que se equivocó en la interpretación o aplicación de las normas procesales o de derecho sustantivo, o cuando la cuantía impuesta sea excesiva, los tribunales apelativos deben intervenir con la decisión del tribunal recurrido. *Id*.

**III.**

En el caso de autos, nos encontramos ante una Sentencia emitida por el TPI en la que declaró *Ha Lugar* una solicitud de sentencia sumaria presentada por la parte Apelada. Por ello, antes de entrar en los méritos del presente recurso, es menester que realicemos una revisión *de novo* de la solicitud de sentencia sumaria presentada por PAG. Efectuado tal ejercicio, disponemos que no existen hechos materiales en controversia y que las determinaciones del TPI sobre los hechos no controvertidos son correctas y procede confirmar la sentencia que el apelante nos ha solicitado revisar.

Sobre el aspecto de los honorarios por temeridad impuestos por el TPI, también procede confirmarlos. No tenemos duda que la forma de negar lo evidente y tratar de crear controversias inexistentes constituyen los actos necesarios para determinar temeridad. Como indicamos, la temeridad procede cuando "por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente a asumir las molestias, gastos, trabajo e inconveniencias de un pleito". Andamios de PR v. Newport Bonding, supra. Ese lenguaje antes citado describe la actuación del apelante en este caso.

Los contratos de préstamos pactados entre las partes fueron una mezcla de acuerdos verbales con documentos que no permiten dudas sobre la realidad del préstamo. El TPI no se enfrentó nunca a una controversia en torno a la credibilidad de las partes. De los testimonios presentados en los documentos que tuvo ante sí el tribunal, solo surge la realidad de los pactos habidos entre las partes, la cantidad de los dineros prestados y también que no se acordó entre las partes intereses sobre el préstamo y

tampoco se pactó un término para el pago por el apelante del contrato de préstamo acordado entre la apelada y el apelante. Consideramos que los hechos determinados están ampliamente sostenidos por la prueba documental que tuvo ante sí el TPI y por ello confirmamos la Sentencia emitida por la vía sumaria.

**IV.**

Por los fundamentos, antes expuestos, confirmamos la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones