ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| JOSÉ RODRÍGUEZ<br><br>Apelante<br><br>v.<br><br>DAMIEN WILLIAM URENA;<br>DEVIN JOEY URENA;<br>DESIREE URENA;<br>DESTINY S. URENA<br><br>Apelados | KLAN202400729 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.:<br>CA2023CV00013<br><br>Sobre: Declaratoria de herederos; Partición de herencia; División de comunidad; Nivelación |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora, y la Jueza Boria Vizcarrondo

Ortiz Flores, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de octubre de 2024.

Acude ante nosotros el señor José Rodríguez (Sr. Rodríguez; apelante) y nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI) el 26 de junio de 2024 y notificada el 3 de julio de 2024. En su decisión el foro primario dictó sentencia sumaria parcial y determinó, en cuanto a los otros asuntos que no fueron atendidos por la vía sumaria, que no se encontraba en posición para resolverlos por falta de prueba.

Adelantamos que, por los fundamentos que expondremos a continuación, confirmamos el dictamen apelado.

**I**

El Sr. Rodríguez estuvo casado con la señora Sylvia Rodríguez (Sra. Rodríguez; causante) hasta la fecha del deceso de esta el día 1 de abril de 2020 en el estado de Nueva York.[1] La Sra. Rodríguez llegó a otorgar testamento en dicho estado el cual fue debidamente protocolizado luego de su fallecimiento.[2] En este dispuso de sus prendas y los inmuebles que

---

[1] Véase Apéndice del recurso, pág. 14.
[2] Véase Apéndice del recurso, págs. 15-27.

Número Identificador
SEN2024_____

tenía a su nombre, los cuales se encuentran sitos en Nueva York. En cuanto a los bienes que restaran adjudicó 25% al Sr. Rodríguez y 75% a sus nietos, entiéndase Damien William Urena, Devin Joey Urena, Desiree Urena y Destiny Urena (apelados; nietos).[3] Aunque no fue identificado específicamente en su testamento, resultó que a su nombre también estaban dos inmuebles sitos en Puerto Rico, un apartamento y su lote de estacionamiento, ambos con la siguiente descripción:

a. "Propiedad Horizontal: CONDOMINIO GOLDEN TOWER de Carolina Norte. Apartamento: 801. Cabida: 99.91 Metros Cuadrados. Propiedad horizontal: apartamiento ochocientos uno: es un apartamiento residencial localizado en el lado sur del edificio que mide cincuenta pies dos pulgadas de largo por su parte más larga medido desde la puerta de entrada hasta el último cuarto por veinte pies de ancho más cinco pies de balcón que hacen un área superficial de mil cero setenta y cinco pies cuadrados, equivalente a noventa y nueve punto noventa y uno metros cuadrados. Sus LINDES y distancias son las siguientes: por el NORTE, en una distancia de veinte pies con el vestíbulo donde están los ascensores y el apartamiento ochocientos dos. Por el SUR, en una distancia de veinticinco pies con seis pulgadas con el apartamiento ocho cientos tres. Por el ESTE, en una distancia de cincuenta pies con dos pulgadas con el patio este del edificio. Por el OESTE, en cincuenta pies con dos pulgadas con el cuarto de elevadores y con el corredor del edificio que da a los ascensores y escaleras que a su vez da al piso terrero y al área de estacionamiento. Este apartamento consta de balcón, tres cuartos dormitorios con closet, sala comedora, cocina, dos cuartos de baño y calentador. Los dos baños están equipados con bañera, lavamanos y servicio sanitario. La cocina tiene estufa, fregadero y gabinetes. La puerta de entrada de este apartamento está en su lado norte y por ella se sale al pasillo que da a los elevadores y a las escaleras y de allí se sale al exterior. PARTICIPACIÓN: Tiene una participación en los elementos comunes generales de cero punto cero cero tres [siete] cero y en los elementos comunes limitados". Inscripción: Finca (37,130) de Carolina Norte; Catastro (064-032-191-01-120). Valor: $100,00.00, conforme tasación realizada por Orlando Santiago Arocho, Lic. 918EPA/88CR, con fecha de 21 de febrero de 2023.

b. "Propiedad Horizontal: CONDOMINIO GOLDEN TOWER de Carolina Norte. Estacionamiento: 210. Cabida: 14.92 Metros Cuadrados. Urbana. Propiedad horizontal:

---

[3] Apéndice del recurso, pág. 21.

apartamiento de estacionamiento número doscientos diez: tiene un área superficial de aproximadamente ciento sesenta puntos cincuenta y seis pies cuadrados, equivalentes a catorce punto noventa y dos metros cuadrados. COLINDA por el NORTE, en una distancia de once pulgadas lineales con el apartamiento de estacionamiento número doscientos diez y siete; por el SUR en una distancia de ocho pies once pulgadas lineales con el área de viraje del estacionamiento; por el ESTE en una distancia de diez y ocho pies lineales con el apartamiento de estacionamiento número doscientos nueve; y por el OESTE, en una distancia de diez y ocho pies lineales con el apartamiento de estacionamiento número doscientos once. Tiene una participación en los elementos comunes generales de punto cero cero cero cinco cinco y en los elementos comunes limitados que le corresponde de punto cero cero cero seis cero cuatro". Inscripción: Finca (37,131) de Carolina Norte; Catastro (064-032-191-01-401). Valor: ($5,000.00), conforme tasación realizada por Orlando Santiago Arocho, Lic. 918EPA/88CR, con fecha de 21 de febrero de 2023.[4]

En cuanto a estos últimos dos bienes, fue que el Sr. Rodríguez presentó ante el Tribunal de Primera Instancia en Carolina una *Demanda* en la cual solicitó al foro primario que: declarara como herederos al apelante y a los apelados; ordenara la división, liquidación y partición de la herencia; ordenara la división de la comunidad; impusiera a los apelados el pago de sus obligaciones equivalente a su participación en la comunidad en cuanto a la hipoteca y mantenimiento de los inmuebles objetos de la acción; e impusiera el pago de gastos, costas y honorarios de abogado a los apelados por su extrema temeridad.[5] Los apelados fueron emplazados por edicto debido a que se encuentran fuera de Puerto Rico. Luego de expirado el término para contestar la *Demanda*, el apelante solicitó una anotación de rebeldía a los apelados la cual fue otorgada.[6]

El 4 de julio de 2023,[7] el Sr. Rodríguez sometió al foro primario el escrito intitulado *Moción en Solicitud de Sentencia Sumaria Parcial y Cuaderno Particional* donde solicitó que el tribunal declarara a los apelados como herederos universales de la causante Silvia Rodríguez (Sra.

---

[4] Apéndice del recurso, págs. 4-5.
[5] Apéndice del recurso, pág. 13.
[6] Apéndice del recurso, pág. 44.
[7] Apéndice del recurso, págs. 45-89.

Rodríguez; causante); declarara la partición y adjudicación de los bienes que forman parte del caudal hereditario y ganancial de la causante de acuerdo al cuaderno particional incluyendo lo adeudado por los apelantes según su participación y el usufructo vidual; adjudicara en su totalidad al Sr. Rodríguez los inmuebles objeto del pleito e impusiera a los apelados la cantidad de $10,000.00 por concepto de honorarios de abogado por temeridad y los intereses acumulados al tipo legal prevaleciente por la sentencia dictada.[8] Esta moción, mediante la *Orden* emitida el 4 de agosto de 2023, fue **"que [acreditara] el balance adeudado de la hipoteca** a la fecha del fallecimiento de la causante declarada No Ha Lugar por falta de prueba documental, y de las demás cargas imputables a la herencia" y determinó que "[t]ampoco se ha presentado evidencia que acredite los pagos realizados por el demandante a la hipoteca y demás cargas" por lo que le concedió al apelante 30 días adicionales para proveer la documentación. (Énfasis nuestro.) [9]

A raíz de la solicitud anterior, el TPI también ordenó al Sr. Rodríguez a producir los certificados de nacimiento de los apelados para proceder con la declaratoria de herederos. No obstante, esta gestión no fue fructífera a pesar de los intentos realizados con las entidades gubernamentales correspondientes en los estados de Nueva York y Pennsylvania puesto que el apelante no es pariente consanguíneo de los apelados y estos continuaban negándose a proveer dicha documentación.[10] Así las cosas, el 7 de febrero de 2024, el Sr. Rodríguez solicitó que se dictara sentencia por las alegaciones.[11] A tales efectos, el TPI emitió una *Orden* en la cual instruyó al Sr. Rodríguez, lo siguiente: "explicar por qué los demandados deben responder por el balance actual de la deuda hipotecaria a base de su participación como si se tratara de un crédito a favor de la parte demandante y no como una baja del caudal[,]" y "presentar los cómputos

---

[8] Apéndice del recurso, pág. 54.
[9] Apéndice del recurso, pág. 90.
[10] Apéndice del recurso, págs. 176-177.
[11] Apéndice del recurso, págs. 176-188.

realizados para la conmutación de la cuota viudal".[12] El apelante cumplió con lo ordenado de manera oportuna.[13]

Finalmente, el 26 de junio de 2024, el TPI emitió una *Sentencia*, notificada el 3 de julio de 2024, en la cual determinó que solo se probaron parcialmente los hechos y las alegaciones de la *Demanda* y que al haberse cumplido con todos los requisitos en ley procedía que el tribunal dividiera el objeto del caudal, mas no su liquidación por motivo de insuficiencia de prueba.[14] Al respecto, el foro apelado dispuso lo siguiente:

1. Se adjudica el Apto. 801 del Condominio Golden Tower con un valor de $100,000 según la tasación sometida y el estacionamiento 210 del Condominio Golden Tower, con un valor de $5,000, al demandante en un 62.50% y a los demandados Damien William Ureña, Devin Joey Ureña, Desiree Ureña y Destiny S. Ureña en un 9.375% a cada uno.
2. El demandante es responsable de las bajas del caudal en un 62.5% y los demandados en un 9.375% cada uno.
3. El total de los pagos a la hipoteca y al mantenimiento de la propiedad realizados por el Sr. José Rodríguez asciende a la suma de $31,785.00. Le corresponde a cada demandado satisfacerle el 9.375% de dicha cantidad al demandante. Entiéndase, la suma de $2,979.84 cada uno. En lo sucesivo, se determina que los demandados deberán contribuir al pago de la hipoteca de la propiedad inmueble y del mantenimiento de la misma en la misma proporción adjudicada a cada demandado.
4. El total de gastos relacionados con la herencia de la causante que totalizan la cantidad de $1,750.00 fueron pagados por el demandante. Le corresponde a cada demandado satisfacerle el 9.375% de dicha cantidad al demandante. Entiéndase, la suma de $164.06 cada uno.
5. Para que proceda la liquidación de los bienes hereditarios de la causante Silvia Rodríguez t/c/c Silvia Donaida Mago t/c/c Silvia Mago t/c/c Silvia Adonaida Mago se requiere la adjudicación de los bienes de forma exclusiva a los herederos, previo a saldar los pasivos de la masa hereditaria, como lo es la deuda hipotecaria del bien inmueble en este caso, pero ello no se ha solicitado. Tampoco se ha solicitado la venta de las propiedades objeto de este pleito.
6. No habiendo un caudal relicto neto cuantificable, este Tribunal no está en posición de computar el usufructo viudal que le corresponde al demandante.
7. Las costas relacionadas con este pleito se concederán conforme la Regla 44.1 de Procedimiento Civil.[15]

---

[12] Apéndice del recurso, pág. 189.
[13] Apéndice del recurso, págs. 190-195.
[14] Apéndice del recurso, pág. 7.
[15] Apéndice del recurso, págs. 7-8.

Inconforme con la decisión del foro primario, el apelante acude ante nosotros por el presente recurso y señala los siguientes señalamientos de error:

> Erró el Honorable TPI, Sala Superior de Carolina, al declarar el total de los pagos a la hipoteca y al mantenimiento de la propiedad relacionados por el Apelante en la suma de $31,785.00, así como la suma de $2,979.84 que cada Apelado debe satisfacerle al Apelante por la referida deuda hipotecaria y mantenimiento, a pesar de haber determinado que se cumplió todos los requisitos de Ley para que el Tribunal proceda con la división objeto del caudal y el pago de los créditos reclamados por el demandante.

> Erró el Honorable TPI al concluir que para que proceda la liquidación de los bienes hereditarios se requiere la adjudicación de los bienes de forma exclusiva a los herederos, previo a saldar los pasivos de la masa hereditaria, como lo es la deuda hipotecaria del bien inmueble en este caso, por alegadamente no haberse solicitado, así como no haberse solicitado la venta de las propiedades objeto del pleito.

> Erró el Honorable TPI al concluir que no habiendo un caudal relicto neto cuantificable, este tribunal no está en posición de computar el usufructo vidual que le corresponde al Apelante.

> Erró el tribunal al no imponer a la parte Apelada el pago de las costas, gastos y una suma no menor de $10,000.00 en honorarios de abogado por su extrema temeridad[.]impuso 44.1

Mediante *Resolución*, otorgamos a la parte apelada hasta el 3 de septiembre de 2024 para presentar su alegato en oposición al recurso presentado, pero esta no compareció. No obstante, el recurso quedó perfeccionado y nos encontramos en posición para resolver.

## II

## A.

Por motivo de que los hechos del caso ocurrieron antes de la aprobación del Código Civil de 2020, el derecho aplicable de la controversia que nos compete corresponde al Código Civil derogado de 1930. Veamos.

Mediante el acto jurídico de la partición "se pone fin a la indivisión de bienes (comunidad ordinaria) en aquellos casos en que se adjudican partes proindiviso en cosa o cosas determinadas". Puig Peña, *Tratado de Derecho Civil Español*, Vol. 3, pág. 162 (1965). Es decir, "[l]a principal función de la partición es la de poner término a la comunidad hereditaria

convirtiendo la cuota de cada heredero sobre la herencia (derecho hereditario *in abstracto*) en bienes determinados o cuotas sobre bienes determinados. *Id.* Al respecto, existen dos maneras de terminar la cotitularidad sobre un patrimonio relicto. Estas son mediante la partición judicial o extrajudicial. De manera general, se favorece la partición extrajudicial por tratarse de llevarse a cabo por acuerdo entre los herederos sin tener que acudir a un foro judicial lo cual implica un proceso más ágil y menos costoso. No obstante, de no haber acuerdo entre los herederos, procede entonces la partición judicial como alternativa de última instancia. 31 LPRA sec. 2878.

La partición de la herencia está regulada esencialmente por los Artículos 1005 a 1034 del Código Civil de Puerto Rico, 31 LPRA 2871-2919 y por las Artículos 600 al 605 del Código de Enjuiciamiento Civil, 32 LPRA 2621-2626. Debido a la multiplicidad de intereses de los miembros de una comunidad hereditaria, su terminación está sometida a varias normas indispensables para la validez del negocio jurídico pluripersonal que culmina con la partición de la herencia. Por consiguiente, para realizar dicha partición, es menester llevar a cabo varias operaciones previas. Dichas operaciones particionales lo son el inventario y avalúo, la liquidación, la división, la formación de lotes o hijuelas y, por último, la adjudicación. E. González Tejera, *Derecho Sucesorio Puertorriqueño*, Vol. I, págs. 293-294 (1983).

Como primer paso procede la determinación del monto total del activo y del pasivo sucesorio, lo cual requiere un inventario de todos los activos, así como el avalúo de éstos. **Determinado el activo y pasivo, se liquida el caudal mediante el cobro de créditos y el pago de deudas. Luego, se fija el haber de cada heredero siguiendo lo dispuesto en el testamento o en la declaratoria de herederos, en la proporción establecida en la ley o en el testamento.** Una vez esto haya sido determinado entonces se forman hijuelas de bienes de la misma calidad y especie y de la misma igualdad, cuando la participación es igual, y se

adjudican éstas a los herederos de manera que, con la aceptación de la hijuela cada heredero transforma su participación indivisa en la herencia en bienes concretos y determinados, en los cuales [,] de ordinario, tendrá cada uno propiedad exclusiva. (Énfasis nuestro.) E. González Tejera, *Derecho de sucesiones*, Tomo I: La sucesión intestal, pág. 400 (2001).

Al llegar a esta etapa, se procede a la adjudicación el cual es el último paso. Ello constituye el ejercicio de adjudicar los lotes a los herederos, de manera que, con la aceptación del conjunto de bienes asignados, cada uno de ellos transforma su participación indivisa en la herencia de su causante en unos bienes concretos y determinados sobre los que tendrá la propiedad exclusiva. E. González Tejera, *Derecho de sucesiones*, Tomo I: La sucesión intestal, pág. 400 (2001).

**B.**

Las Reglas 44.1 (d) y 44.3 (b) de Procedimiento Civil, 32 LPRA Ap. V. R.44.1 (d), 44.3 (b), autorizan la condena al pago de honorarios de abogado e intereses por temeridad. Además, establecen que su imposición depende exclusivamente de la determinación que haga el magistrado que presidió el proceso, respecto a si la parte perdedora, o su abogado, actuaron en forma temeraria o frívola. Una vez determinada la temeridad, la imposición de una suma razonable de honorarios de abogado por temeridad es imperativa. El propósito de la imposición de honorarios de abogado en casos de temeridad es establecer una penalidad a un litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajos e inconvenientes de un pleito. *Andamios de P. R. v. Newport Bonding*, 179 DPR 503, 520 (2010), citando a *Fernández v. San Juan Cement Co., Inc.*, 118 DPR 713, 718 (1987). La imposición de honorarios de abogado por temeridad es una facultad discrecional del tribunal que no será variada a menos que la misma constituya un abuso de discreción. *Monteagudo Pérez v. E.L.A.*, 172 DPR 12, 31 (2007).

**III**

De manera sucinta, los primeros tres errores señalados por el apelante en su recurso están íntimamente relacionados por lo que los discutiremos conjuntamente. Los mismos van dirigidos al proceso de partición de la herencia la cual en este caso está compuesta de dos inmuebles y sus pasivos. Dicho proceso comienza con el inventario y avalúo de los objetos que componen el caudal para entonces pasar a su liquidación el cual consiste en cobrar los créditos correspondientes y saldar las deudas pendientes. Sin haber realizado dicho proceso no se puede continuar al próximo paso de fijar el haber de cada heredero según el testamento o la declaratoria de herederos, esto es lo que comprende la división.

Habiendo aclarado lo anterior, el tribunal llegó hasta el segundo paso que es la liquidación, ello al ordenar el pago de los créditos debidos al Sr. Rodríguez por haber pagado la hipoteca y el mantenimiento del apartamento con su dinero privativo desde el fallecimiento de la causante hasta junio de 2023, que fue hasta la fecha en que se proveyó evidencia de los pagos. Al respecto, el tribunal indicó que la cantidad pagada por el apelante ascendió a la suma de $31,785.00. No obstante, el apelante señala en su recurso que dicha cantidad es errónea y que los pagos realizados por este ascienden a $41,565.00 sin proveer evidencia adicional alguna a esos efectos. Al contrario, para apoyar dicho argumento hace referencia a su *Moción en Solicitud de Sentencia Sumaria Parcial y Cuaderno Particional* donde es el mismo apelante quien subraya que la cantidad pagada por este hasta junio de 2023 es $31,785.00.[16] Por lo que estamos ante una situación donde el apelante se contradice a sí mismo.

Ahora bien, es necesario saldar la hipoteca que grava el apartamento descrito para poder dividir la herencia, y el apelante alega que saldar la deuda hipotecaria supone un requisito oneroso y pedirles a los apelados que paguen, mientras que estos no han comparecido al pleito,

---

[16] Apéndice del recurso, pág. 47.

deja el caso en total incertidumbre. Diferimos. No se trata de una carga onerosa pues solo si el final de este cálculo resulta en uno positivo es que se procede a dividir según lo establecido por la Sra. Rodríguez en su testamento. Por otro lado, el tribunal realizó los pronunciamientos pertinentes a los efectos de las causas de acción reclamadas por el Sr. Rodríguez. En caso de estos no cumplir el tribunal tiene a su disposición los mecanismos y las herramientas para hacer valer su dictamen conforme a las Reglas de Procedimiento Civil, por lo que el apelante no se queda desprovisto. El foro primario actuó dentro de sus facultades.

Establecido pues lo anterior, reiteramos que el caudal al cual nos enfrentamos se compone de un apartamento el cual se encuentra gravado por una deuda hipotecaria. Esto significa que, hasta tanto no se salde esta deuda, estamos ante un caudal en negativo el cual imposibilita cálculo alguno puesto que no hay activos para utilizar a la hora de cuantificar el usufructo vidual, a menos que, por ejemplo, vendan la propiedad en cuestión. Por último, el apelante también señala que erró el foro primario al no imponer a los apelados el pago de las costas, gastos y una suma no menor de $10,000.00 en honorarios de abogado por su extrema temeridad. No obstante, en el inciso 7 de las disposiciones de su *Sentencia* el TPI otorgó las costas según lo establecido en la Regla 44.1 de Procedimiento Civil. Esta comprende los gastos y honorarios de abogado por temeridad de así ser determinado por el TPI. Nuevamente no le asiste la razón al apelante.

**IV**

Por los fundamentos anteriormente expuestos, decidimos confirmar el dictamen apelado.

Notifíquese.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La juez Aldebol Mora disiente con el siguiente comentario: Modificaría la página 7 de la *Sentencia* apelada para aclarar en el pronunciamiento número 3 que el total de los pagos a la hipoteca y al mantenimiento de la propiedad realizados por el Sr. José Rodríguez asciende a la suma de $31,785.00 **hasta junio de 2023**.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones